**GREGORY A. CHAIMOV**, OSB #822180
gregorychaimov@dwt.com
**TIM CUNNINGHAM**, OSB #100906
timcunningham@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW 5th Ave, Ste 2400
Portland, Oregon 97201-5610
Telephone: 503-241-2300
Facsimile: 503-778-5299

**JAMES C. GRANT** (*pro hac vice* application pending)
jamesgrant@dwt.com
**AMBIKA K. DORAN** (*pro hac vice* application pending)
ambikadoran@dwt.com
**THOMAS J. WYRWICH** (*pro hac vice* application pending)
tomwyrwich@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Telephone: 206-622-3150
Facsimile: 206-757-7700

Attorneys for Plaintiff HomeAway.com, Inc.


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AT PORTLAND

| | |
|---|---|
| HOMEAWAY.COM, INC., | Case No. 3:17-cv-00091-PK |
| Plaintiff, | |
| v. | **HOMEAWAY.COM, INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER** |
| CITY OF PORTLAND, | **EXPEDITED HEARING REQUESTED** |
| Defendant. | **REQUEST FOR ORAL ARGUMENT** |

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................iii

MOTION.................................................................................................................. 1

MEMORANDUM OF LAW ........................................................................................ 1

I.      INTRODUCTION ............................................................................... 1

II.     FACTUAL BACKGROUND ................................................................ 3

      A.      HomeAway ............................................................................ 3

      B.      The Ordinance ....................................................................... 4

III.     ARGUMENT ...................................................................................... 7

      A.      Standard for Preliminary Injunction ...................................... 7

      B.      The Ordinance Violates and Is Preempted By the CDA........................................ 8

      C.      The Ordinance Violates the First Amendment ..................... 14

      D.      The Stored Communications Act Preempts the Ordinance's Disclosure and Inspection Provisions. .......................................................... 20

      E.      HomeAway Faces Irreparable Harm Unless the Ordinance is Enjoined.............. 22

      F.      The Balance of Equities is in HomeAway's Favor............................................... 24

IV.     CONCLUSION................................................................................... 25

**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF AUTHORITIES

Page(s)

## Cases

*ACLU v. City of Las Vegas*,
333 F.3d 1092 (9th Cir. 2003) ..............................................................................................17

*Almeida v. Amazon.com, Inc.*
456 F.3d 1316 (11th Cir. 2006) ..............................................................................................9

*Am. Trucking Associations, Inc. v. City of Los Angeles*,
559 F.3d 1046 (9th Cir. 2009) ........................................................................................24, 25

*Backpage.com, LLC v. Cooper*,
939 F. Supp. 2d 805 (M.D. Tenn. 2013)........................................................................11, 12, 16

*Backpage.com, LLC v. Hoffman*,
2013 WL 4502097 (D.N.J. Aug. 30, 2013) ..............................................................................11

*Backpage.com, LLC v. McKenna*,
881 F. Supp. 2d 1262 (W.D. Wash. 2012)..............................................................11, 12, 16, 25

*Bank One, Utah v. Guttau*,
190 F.3d 844 (8th Cir. 1999) ................................................................................................25

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ........................................................................................9, 10, 13

*Bartnicki v. Vopper*,
532 U.S. 514 (2001)..........................................................................................................2, 15

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ..............................................................................................8, 23

*Bigelow v. Virginia*,
421 U.S. 809 (1975)................................................................................................................14

*Campbell v. Facebook Inc.*
2016 WL 2897936 (N.D. Cal. May 18, 2016) ..........................................................................21

*Carafano v. Metrosplash.com, Inc.*,
339 F.3d 1119 (9th Cir. 2003) ..............................................................................................2, 9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
447 U.S. 557 (1980)................................................................................................................15

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
  519 F.3d 666 (7th Cir. 2008) ...............................................................9

*Crispin v. Christian Audigier, Inc.*,
  717 F. Supp. 2d 965 (C.D. Cal. 2010) ................................................21

*Desert Outdoor Advertising, Inc. v. City of Moreno Valley*,
  103 F.3d 814 (9th Cir. 1996) ..........................................................17, 18

*Doe v. MySpace, Inc.*,
  528 F.3d 413 (5th Cir. 2008) ................................................................9

*Edenfield v. Fane*,
  507 U.S. 761 (1993)...........................................................................15

*Elrod v. Burns*,
  427 U.S. 347 (1976)...........................................................................23

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
  521 F.3d 1157 (9th Cir. 2008) (en banc) ..........................................9, 12

*Farris v. Seabrook*,
  677 F.3d 858 (9th Cir. 2012) ............................................................7, 23

*Fields v. Twitter*,
  2016 WL 4205687 (N.D. Cal. Aug. 10, 2016) ....................................14

*Fla. Bar v. Went For It, Inc.*,
  515 U.S. 618 (1995)...........................................................................15

*Forsyth Cnty. v. Nationalist Movement*,
  505 U.S. 123 (1992)...........................................................................17

*Gavra v. Google Inc.*,
  2013 WL 3788241 (N.D. Cal. July 17, 2013) .....................................13

*Green v. Am. Online (AOL)*,
  318 F.3d 465 (3d Cir. 2003)..................................................................9

*Hill v. StubHub, Inc.*,
  219 N.C. App. 227 (2012) ...................................................................13

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988).............................................................................19

*Insight for Living Ministries v. Burwell*,
  2014 WL 6706921 (E.D. Tex. Nov. 25, 2014) ....................................23

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12 (1st Cir. 2016), *cert. denied*, 2017 WL 69715 ..........................................9, 13, 14

*Johnson v. Arden*,
   614 F.3d 785 (8th Cir. 2010) ...............................................9

*Jones v. Dirty World Entm't Recordings LLC*,
   755 F.3d 398 (6th Cir. 2014) ...............................................9

*Kathleen R. v. City of Livermore*,
   87 Cal. App. 4th 684 (2001) ...............................................11

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) ...............................................9

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cir. 2009) ...............................................24

*Mahroom v. Best W. Int'l, Inc.*,
   2009 WL 248262 (N.D. Cal. Feb. 2, 2009) ...............................................24

*Manual Enters., Inc. v. Day*,
   370 U.S. 478 (1962)...............................................19

*Mazur v. eBay Inc.*,
   2008 WL 618988 (N.D. Cal. Mar. 4, 2008)...............................................12

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) ...............................................25

*Memphis Publ'g Co. v. Leech*,
   539 F. Supp. 405 (W.D. Tenn. 1982)...............................................16

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992)...............................................23

*Nebraska Press Ass'n v. Stuart*,
   427 U.S. 539 (1976)...............................................17

*Nemet Chevrolet, Ltd. v. Consumraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ...............................................8

*New York v. Ferber*,
   458 U.S. 747 (1982)...............................................19

*News & Sun Sentinel Co. v. Bd. of Cnty. Comm'rs*,
   693 F. Supp. 1066 (S.D. Fla. 1987) ...............................................17

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Oklahoma v. United States*,
   994 F. Supp. 1358 (W.D. Okla. 1997), *reversed on other grounds*,
   161 F.3d 1266 (10th Cir. 1998) ...........................................................23

*Pearson v. Edgar*,
   153 F.3d 397 (7th Cir. 1998) .................................................................15

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ................................................................8

*Planned Parenthood of Idaho, Inc. v. Wasden*,
   376 F.3d 908 (9th Cir. 2004) ................................................................19

*Quon v. Arch Wireless Operating Co.*,
   529 F.3d 892 (9th Cir. 2008), *rev'd on other grounds*, *City of Ontario v.
   Quon*, 560 U.S. 746 (2010) ...................................................................20

*Reed v. Town of Gilbert*,
   135 S. Ct. 2218 (2015) ..........................................................................14

*Ricci v. Teamsters Union Local 456*,
   781 F.3d 25 (2d Cir. 2015) .....................................................................9

*Satellite Television of N.Y. Assocs. v. Finneran*,
   579 F. Supp. 1546 (S.D.N.Y. 1984) ......................................................24

*Shah v. MyLife.Com, Inc.*,
   2012 WL 4863696 (D. Or. Sept. 21, 2012) ........................................9, 11

*Smith v. California*,
   361 U.S. 147 (1960) ..........................................................................18, 19

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ..........................................................................14, 15

*Southeastern Promotions, Ltd. v. Conrad*,
   420 U.S. 546 (1975) ..............................................................................17

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ..................................................................7

*Telecommunications Regulatory Bd. of Puerto Rico v. CTIA-Wireless Ass'n*,
   752 F.3d 60 (1st Cir. 2014)....................................................................22

*Thalheimer v. City of San Diego*,
   645 F.3d 1109 (9th Cir. 2011) ................................................................7

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Theofel v. Farey-Jones,*
  359 F.3d 1066 (9th Cir. 2004) ........................................................................20

*Thompson v. W. States Med. Ctr.,*
  535 U.S. 357 (2002) .......................................................................................16

*United States v. X-Citement Video, Inc.,*
  513 U.S. 64 (1994) .........................................................................................19

*Universal Commc'n Sys., Inc. v. Lycos, Inc.,*
  478 F.3d 413 (1st Cir. 2007) ........................................................................8, 9

*Valle Del Sol Inc. v. Whiting,*
  709 F.3d 808 (9th Cir. 2013) ........................................................................15

*Valle del Sol Inc. v. Whiting,*
  732 F.3d 1006 (9th Cir. 2013) ......................................................................23

*Viacom Int'l, Inc. v. YouTube Inc.*
  253 F.R.D. 256 (S.D.N.Y. 2008) ..................................................................21

*Village of Schaumburg v. Citizens for a Better Env't,*
  444 U.S. 620 (1980) .......................................................................................15

*Zeran v. America Online, Inc.,*
  129 F.3d 327 (4th Cir. 1997) ...............................................................9, 12, 13

**Statutes**

18 U.S.C. § 2510(15), § 2711(2) ...........................................................................21

18 U.S.C. § 2702(a)(3) ...........................................................................................21

18 U.S.C. § 2703(a) ................................................................................................21

47 U.S.C. § 230(b)(2) ...............................................................................................8

47 U.S.C. §§ 230(c)(1) ............................................................................1, 8, 10, 14

47 U.S.C. § 230(c)(2) ...............................................................................................8

47 U.S.C. § 230(f)(2) ...............................................................................................9

P.C.C. § 33.207 .......................................................................................................12

P.C.C. § 33.270 .......................................................................................................19

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**Rules**

Fed. R. Civ. P. 65 .................................................................................................................1

**Constitutional Provisions**

U.S. Const., Amend I ................................................................................... passim

U.S. Const., Amend. IV .............................................................................20

**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# MOTION

Pursuant to Fed. R. Civ. P. 65, plaintiff HomeAway.com, Inc. requests an order

temporarily restraining the City of Portland ("City") from enforcing portions of Ordinance No.

188170, and an order setting a hearing for the City to show cause why a preliminary injunction

should not issue. This Motion is supported by the accompanying Memorandum of Law and the

concurrently filed declarations of Ambika K. Doran and Bill Furlong.

# MEMORANDUM OF LAW

## I.     INTRODUCTION

Plaintiff HomeAway.com, Inc. ("HomeAway") respectfully requests a temporary

restraining order and preliminary injunction enjoining the "City" from enforcing portions of

Ordinance No. 188170 (the "Ordinance"). The Ordinance, which took effect Friday, broadly

bars *anyone*—from the *Oregonian* to Craigslist to hosting platforms like HomeAway—from

publishing an advertisement for the short-term rental of property without first registering with

the City and then complying with onerous obligations. The Ordinance reflects the City's

apparent attempt to transfer the burden of enforcing the City's short-term rental restrictions from

the City to HomeAway and other publishers. This is impermissible.

*First*, the Ordinance violates Section 230 of the Communications Decency Act ("CDA"),

which prohibits laws that "treat" websites "as the publisher or speaker of any information

provided by another information content provider." 47 U.S.C. §§ 230(c)(1). Courts, including

the Ninth Circuit, have broadly construed Section 230 to bar liability for websites premised on

allegedly unlawful content provided by third parties. The Ordinance violates this proscription by

penalizing websites if they publish or fail to remove listings unless the listings include any

applicable City-issued permit number and unless "all applicable legal requirements" allowing the

occupancy of the rental "has [sic] been met"—even though, undisputedly, third parties provide

the listings. Moreover, the Ordinance imposes liability for publishing listings *at all* if

HomeAway and similar websites do not first register with the City. Congress designed Section

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

230 to remove the "obvious chilling effect" caused by "the specter of tort liability" for every message a website republishes. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003). In view of the sheer volume of listings that appear on hosting platforms—and the resources it would take to review all of them—the Ordinance will have that effect here.

*Second*, the Ordinance violates the First Amendment in at least three ways. The prohibition on the publication of certain ads—i.e., rentals that do not comply with City law—is a content-based restriction that is presumptively unconstitutional. The City cannot overcome this presumption because it cannot show that the restriction directly advances a substantial governmental interest in a narrowly tailored way, as the "normal method of deterring unlawful conduct" is to punish the conduct, not prohibit speech about it. *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001). The City cannot show that enforcing its laws against owners who rent properties in violation of the law would be ineffective or adequate. Moreover, the Ordinance imposes an improper prior restraint because it gives undue discretion to the City's enforcement agency as to what a publisher must provide to register with the City for the right to publish advertisements. Finally, the Ordinance improperly permits the City to levy civil penalties without any scienter requirement—which would unconstitutionally impose hefty fines on HomeAway for listings it did not know failed to comply with City law.

*Third*, the provisions of the Ordinance requiring HomeAway to disclose user information to the City violate and are preempted by the Stored Communications Act, 18 U.S.C. § 2702 *et seq.* The Ordinance requires websites like HomeAway to disclose customer names, rental addresses, and other contact information—and potentially even information about the length and prices of stays arranged through its platform—without a subpoena or other legal process. This requirement squarely conflicts with the SCA, which preempts state laws that compel websites like HomeAway to release such information to the government without the required process.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

## II.     FACTUAL BACKGROUND

### A.     HomeAway

HomeAway provides websites through which individuals desiring to book accommodations ("guests") and those listing accommodations available for rental ("hosts") can find each other and enter into agreements for rentals. HomeAway operates HomeAway.com, VRBO.com, and VacationRentals.com.[1] *See* Declaration of Bill Furlong ("Furlong Decl.") ¶ 2. HomeAway connects guests and owners of more than one million properties in all 50 states. *Id.* ¶ 2.

HomeAway does not manage, operate, lease, or own the accommodations listed by third-party hosts and is not a party to the agreements between guests and hosts for the booking of rentals. Furlong Decl. ¶ 3. HomeAway's websites provide means by which hosts can list their accommodations and guests can locate and connect with hosts. *Id.* ¶ 2. Hosts provide the content for listings, such as descriptions and rental prices. *Id.* ¶ 5. HomeAway requires hosts to agree they are solely responsible for the content of their listings. *See id.* ¶ 6 & Ex. 2 § 8 ("All property listings on the Site are the sole responsibility of the" owner). HomeAway does not review listings before they appear on its websites. *Id.* ¶ 13.

HomeAway requires hosts and guests to comply with local laws in listing and renting units. Its Terms and Conditions state that owners "are responsible for and agree to abide by all laws, rules, ordinances, or regulations applicable to the listing of their rental property and the conduct of their rental business, including but not limited to any and all laws, rules, ordinances, regulations or other and requirements . . . ." Furlong Decl. Ex. 2 at 1.

HomeAway hosts pay for services in one of two ways. First, they may buy subscriptions to advertise their properties for a specified period of time, such as a year. Furlong Decl. ¶ 4. Second, they may choose a pay-per-booking option, paying for the services based on a percentage of the total cost of a confirmed booking. *Id.* Hosts and guests may enter rental

---

[1] The three websites are referred to collectively as "HomeAway" or the "HomeAway websites."

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

agreements through online booking and online payment services, but those services use a third-party processor. *Id.* ¶ 6. Hosts and guests may also arrange for rentals through messages using HomeAway's websites, or by exchanging phone numbers or email addresses and communicating directly. *Id.* In instances when hosts and guests arrange rentals and payments on their own, HomeAway may have no information about whether rentals occurred or only such information as is reflected in host-guest communications through the website. *Id.* ¶¶ 7-8.

**B.     The Ordinance**

Pursuant to Chapter 6.04 of the Portland City Code, the City collects a transient lodgings tax from anyone who provides short-term lodging within city limits. In October 2015, the City filed a lawsuit against HomeAway, seeking to collect $2,540,106 for alleged taxes, penalties, and interest, as well as declaratory and injunctive relief that would prohibit HomeAway from publishing listings for units within the City unless it complied with the City's interpretation of the Code. *See* No. 3:15-cv-01984-MO. Dkt. 1. HomeAway moved to dismiss and argued, among other things, that the Ordinance did not apply to it. *Id.* Dkt. 7. On June 7, 2016, the Court granted the motion to dismiss. *Id.* Dkt. 29. The City filed an Amended Complaint on July 11, 2016, *id.* Dkt. 34, which HomeAway moved to dismiss on August 12, 2016, *id.* Dkt. 37. The motion was argued December 16, 2016, and remains pending before this Court. *Id.* Dkt. 50.

Ostensibly in response to the Court's order in *Portland v. HomeAway*, the City Council drafted the Ordinance, which passed the City Council on December 21, 2016, and took effect January 20, 2017. The City Council's findings state "the City's intent that certain definitions and other language should include the expectation that short-term rental operations in the 'sharing economy' such as HomeAway, Airbnb and others are subject to the City Code for regulatory and taxation purposes." Declaration of Ambika K. Doran, Ex. 2 ("Ordinance") at 1.

The Ordinance defines "Operator" as "[a]ny Person that facilitates the reservation of an accommodation and collects the payment for the Room reservation from the Transient"; "[a]ny Transient Lodging Provider, Transient Lodging Intermediary or Transient Lodging Tax Collector

Page 4 - MOTION FOR TEMPORARY RESTRAINING ORDER

as defined in ORS 320.300"; and "[a] Booking Agent as defined in this Chapter." Ordinance § 6.04.010(J). A "Booking Agent" includes "any Person that provides a means through which a Host may offer a Short-Term Rental for transient lodging occupancy," including "[a]ny Person who lists commercial Hotel rooms or long-term rentals for transient lodging occupancy;" or "[a]ny Person who directly or indirectly accepts, receives or facilitates payment, whether or not they are the ultimate recipient of the payment . . . ." *Id.* § 6.04.010(B).

The Ordinance imposes the following obligations on Operators.

*First*, any person "about to engage in business as an Operator . . . must register with the [Revenue] Division [of the Bureau of Revenue and Financial Services] on a form provided by the Division." Ordinance § 6.040.60(A). The Ordinance does not prescribe the requirements for this form, nor limit the Division's discretion to determine what the form requires. Once registration is complete, the Division establishes an account and issues a Certificate of Authority. *Id.* § 6.040.60(B). "Certificates of Authority must be prominently displayed so as to be seen by all occupants and persons seeking occupancy. If the Rent transaction is facilitated online, the Certificate of Authority must be able to be viewed by the Transient by clicking on [a] link to the Certificate of Authority at a reasonable place during the payment transaction." *Id.*

*Second*, Operators must "prominently display their Type A Permit Number or Type B Conditional Use case file number, as applicable, in all advertising and other listing services. No Operator will advertise or otherwise represent that an accessory Short-Term Rental is available for Occupancy unless all applicable legal requirements allowing the Occupancy of a Short-Term Rental has [sic] been met and the Operator has registered with the Division as required above." Ordinance § 6.04.060(D). The Ordinance does not define "all applicable legal requirements," but the City Code alone establishes numerous requirements for short-term rentals, in addition to standard building code requirements for any sleeping room within the City. Portland City Code ("P.C.C.") § 33.207.050(B). For example, any bedroom must have a "smoke detector that is interconnected with a smoke detector in an adjacent hallway" and a "functioning carbon

Page 5 - MOTION FOR TEMPORARY RESTRAINING ORDER

monoxide alarm." *Id.* § 33.207.050(B)(4)(b-c). Moreover, even certain "structural alterations" that "make the dwelling appear less residential in nature or function are not allowed." *Id.* § 33. 207.050(B)(9).

**Third**, Operators must maintain and make available extensive records, "including but not limited to registration forms or logs, accounting and bank records, supporting documentation for all deductions taken and any other documentation necessary to support the tax report filed or required to be filed." Ordinance § 6.04.130(A). The Division is entitled to "examine during normal business hours the books, papers and accounting records relating to tax returns" after notice "and may investigate the business of the Operator in order to verify the accuracy of any return made. *Id.* § 6.04.130(B). In addition, "[u]pon request" for *any* regulatory purpose, "Operators must provide all physical addresses of transient lodging occupancy locations … and the related contact information, including the name and mailing address of the general manager, agent, owner, Host or other responsible Person for the location." *Id.* § 6.04.040(B).

The Ordinance permits the Division to impose "a civil penalty of up to $500 for each violation of this Chapter." *Id.* § 6.04.170. The Division may assess violations "as frequently as necessary to achieve compliance with this Chapter, up to and including daily." *Id.* In addition, under Section 6.04.130(c) of the Ordinance, "[s]hould the City institute legal proceedings in any state or federal court to collect the taxes, penalties and interest assessed in accordance with this Chapter, the City shall be entitled to its reasonable costs and attorneys' fees"—purportedly even if the City does not prevail in such a proceeding.

The Ordinance took effect January 20, 2017. On January 19, 2017, HomeAway filed suit. Counsel for HomeAway contacted counsel for the City, informing him that HomeAway had more than a week ago asked the office of Mayor Ted Wheeler to stay enforcement of the Ordinance, but had received no answer, prompting it to file the Complaint. Doran Decl. ¶ 2. Counsel for HomeAway also explained that HomeAway intended to file this Motion absent a stay of the provisions challenged in its Complaint. *Id.* The City did not agree to a stay, and

Page 6 - MOTION FOR TEMPORARY RESTRAINING ORDER

instead said it would delay enforcement of those provisions only if it could enforce them retroactively if the challenged provisions were ultimately upheld.  *Id.*[2]

## III.    ARGUMENT

### A.    Standard for Preliminary Injunction

The standard for obtaining a temporary restraining order is "substantially identical" to that of a preliminary injunction.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  The plaintiff must show that:  "(1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest."  *Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir. 2012).  Alternatively, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed, or are threatened with infringement, at which point the burden shifts to the government to justify the restriction."  *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115-16 (9th Cir. 2011).  HomeAway has satisfied these standards.

---

[2] The cities of Anaheim and Santa Monica concluded that their similar ordinances were vulnerable to legal challenge and stayed enforcement.  HomeAway and Airbnb, Inc. filed lawsuits challenging both ordinances.  No. 2:16-cv-6645-ODW-AFM (C.D. Cal.); No. 2:16-cv-06641-ODW-AFM (C.D. Cal.); No. 8:16-cv-1398 (C.D. Cal.); No. 8:16-cv-1402 (C.D. Cal.).  Anaheim, invoking a "savings clause" in its ordinance, responded that given "the current state of the law," the city had determined the ordinance "does not and will not be applied to Airbnb, HomeAway or other hosting platforms."  *See also* Doran Decl. Ex. 3.   A spokesperson for Anaheim said, "[a]fter considering federal communications law, we won't be enforcing parts of Anaheim's short-term rental rules covering online hosting sites."  *Id.* Ex. 4.  And Santa Monica stipulated to stay enforcement of its ordinance so it could "prepare and consider amendments . . . to address the legal challenges."  2:16-cv-06641-ODW-AFM, Dkt. 20.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

### B.    The Ordinance Violates and Is Preempted By the CDA

The CDA bars the government from imposing liability on websites based on content provided by third parties.  It states:  "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  The law bars liability "under any State or local law that is inconsistent with this section."  *Id*. § 230(e)(3).  Section 230 "establish[es] broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'"  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (quoting *Zeran v. America Online, Inc.,* 129 F.3d 327, 331 (4th Cir. 1997)); *see also Nemet Chevrolet, Ltd. v. Consumraffairs.com, Inc*., 591 F.3d 250, 254 (4th Cir. 2009) ("plaintiffs may hold liable the person who creates or develops unlawful content, but not the interactive computer service provider who merely enables that content to be posted online.").

Congress enacted Section 230 to achieve two goals.  First, it "wanted to encourage the unfettered and unregulated development of free speech on the Internet, and to promote the development of e-commerce."  *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003); 47 U.S.C. § 230(b)(2) (statute intended to "preserve the vibrant and competitive free market that presently exists for the Internet.").  Second, it sought to encourage online providers to "self-police" for potentially harmful or offensive material by providing immunity for such efforts.  *Batzel*, 333 F.3d at 1028; *see also* 47 U.S.C. § 230(c)(2).  Congress recognized the Internet would not flourish if intermediaries could be liable for third-party content, "given the volume of material communicated through [it], the difficulty of separating lawful from unlawful speech, and the relative lack of incentives to protect lawful speech."  *Universal Commc'n Sys., Inc. v. Lycos, Inc*., 478 F.3d 413, 419 (1st Cir. 2007); *see also Batzel*, 333 F.3d at 1038 (Section 230 intended to eliminate the "obvious chilling effect" that imposing liability on online providers would cause).  The CDA thus "sought to prevent lawsuits from shutting down websites and other services on the Internet."  *Batzel*, 333 F.3d at 1028.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Courts, including the Ninth Circuit, have interpreted the CDA to establish broad immunity for online providers. *See Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1174-75, 1180 (9th Cir. 2008) (en banc) (Section 230 provides a "broad grant of webhost immunity"); *Jane Doe No. 1 v. Backpage.com, LLC,* 817 F.3d 12, 19 (1st Cir. 2016) (courts have recognized "a capacious conception of what it means to treat a website operator as the publisher or speaker of information provided by a third party"), *cert. denied,* 2017 WL 69715, U.S. (Jan. 09, 2017).[3]

1.   **The CDA Preempts the Ordinance Under the Three-Part Test for Website Immunity**

Section 230 sets forth a three-part test. The law applies and provides immunity when (1) a party is a "provider or user of an interactive computer service," and a law (2) "seeks to treat" the party "as a publisher or speaker" (3) "of information provided by another information content provider." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009). Each of these elements is met here.

First, HomeAway is a provider of an "interactive computer service." 47 U.S.C. § 230(f)(2). The "most common interactive computer services are websites." *Roommates*, 521 F.3d at 1162 n.6; *see also Shah v. MyLife.Com, Inc.*, 2012 WL 4863696, at *3 (D. Or. Sept. 21,

---

[3] *See Lycos,* 478 F.3d at 419 ("Section 230 immunity should be broadly construed"); *Almeida v. Amazon.com, Inc.* 456 F.3d 1316, 1321 (11th Cir. 2006) ("federal circuits have interpreted [Section 230] to establish broad 'federal immunity'") (citation omitted); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123-24 (9th Cir. 2003) (noting "consensus" that "§ 230(c) provides broad immunity for publishing content provided primarily by third parties"); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) ("Courts have construed the immunity provisions in § 230 broadly"); *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398, 407 (6th Cir. 2014); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1359 (D.C. Cir. 2014); *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010); *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 672 (7th Cir. 2008); *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003); *Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 985 n.3 (10th Cir. 2000); *Zeran*, 129 F.3d at 330-31.

Page 9 - MOTION FOR TEMPORARY RESTRAINING ORDER

2012) (holding that website mylife.com and Google "fall within the definition of an 'interactive computer service'").

Second, third parties (*i.e.*, hosts listing their properties) create and provide the content that the Ordinance targets, i.e., listings. Furlong Decl. ¶ 5. Third-party hosts create and provide descriptions of their listings, rental rates, and other details. *Id.* Hosts are responsible for lawfully registering their short-term rentals. *Id.* ¶ 9. The Ordinance acknowledges this because it defines Operator to include a "service . . . usually, though not necessarily, provided through an online platform" that "generally allows a Host to advertise the Short-Term Rental through a website provided by the Booking Agent's hosting platform." *See* Ordinance § 6.04.010(B),(J).

Third, the Ordinance imposes requirements and liability on HomeAway for being the "publisher or speaker" of third-party content. "What matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—[but] whether the cause of action inherently requires the court to treat the [service provider] as a publisher or speaker. If it does, section 230(c)(1) precludes liability." *Barnes*, 521 F.3d at 1101-02. The Ordinance requires HomeAway to monitor, review, and, in practice, block listings (under the threat of stiff civil penalties) to alleviate work the City would otherwise have to do to administer and enforce its short-term rental laws. These acts are integral to HomeAway's role as a "publisher or speaker" of third-party content.

***Limiting Any Publication of Third-Party Content***. The Ordinance attacks a website's fundamental publisher function: the ability to publish third-party content at all. "Subsection (c)(1), by itself, shields from liability **all publication decisions**, whether to edit, to remove, or ***to post***, with respect to content generated entirely by third parties." *Barnes*, 521 F.3d at 1105 (emphasis added). If HomeAway does not register for and receive a Certificate of Authority and make that Certificate available on its website, the Ordinance purports to allow the City to fine HomeAway up to $500 per day for every listing it publishes. Ordinance § 6.040.60(B). But the City can enforce the law against HomeAway—for continuing to publish listings for units located

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

in Portland—only based on the content of third-party advertisements on HomeAway's platform. The CDA does not permit the City to bar the publication of all third-party content without government approval. *See Kathleen R. v. City of Livermore*, 87 Cal. App. 4th 684, 698 (2001) (refusing under Section 230 to enjoin city library from "providing open access to the Internet" because it would "contravene section 230's stated purpose of promoting unfettered development of the Internet").

   ***Liability for Publishing Unlawful Third-Party Content.*** The Ordinance also seeks to impose liability on HomeAway (and websites like it) for publishing allegedly unlawful third-party content. The Ordinance does this by prohibiting publication of two categories of advertisements: those for which the rental does "not comply with all applicable legal requirements" for short-term rental occupancy, and those that do not contain an applicable permit or Conditional Use case file number. Ordinance § 6.04.060(D). The Ordinance seeks to punish HomeAway for publishing listings merely because the author of the listing—the host of the unit—has not complied with requirements the City has imposed on him or her. Yet, as noted above, Section 230 does not permit the state to punish websites for publishing third-party content—even if that content is itself unlawful. *See MyLife.Com*, 2012 WL 4863696, at *3 (defendants could not be liable "for simply republishing information provided by third parties").

   Thus, in a trilogy of cases, courts enjoined state laws under the CDA that purported to impose liability on websites that knowingly published ads for commercial sex acts, even though the ads were authored by third parties. *See Backpage.com, LLC v. Hoffman*, 2013 WL 4502097, at *6 (D.N.J. Aug. 30, 2013) (statute "runs afoul of Section 230 by imposing liability" for "publishing" third-party ads); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805, 824 (M.D. Tenn. 2013) (enjoining statute where "sale of online advertisements regulated by [law] derives" from site's "status" as "publisher"); *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262, 1273-74 (W.D. Wash. 2012) (enjoining statute because it "treat[ed]" websites as "the publisher

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

or speaker of information created by third parties"). The Ordinance is no different: it imposes liability on websites for publishing allegedly unlawful content. Section 230 forbids that.

   ***Requiring Websites to Pre-Screen Content.***   The Ordinance's prohibition on publishing amounts to a mandate that websites pre-screen content to ensure no ad is unlawful. "[S]creening" a listing "is akin to deciding whether to publish" and a website "is immune under Section 230 for its screening decisions." *Mazur v. eBay Inc.*, 2008 WL 618988, at *9 (N.D. Cal. Mar. 4, 2008) (eBay immune for alleged failure to screen). "[B]y imposing liability on online service providers who do not pre-screen content or who 'know' that third party content may violate state law, the statute drastically shifts the unique balance that Congress created with respect to the liability of online service providers that host third party content." *McKenna,* 881 F. Supp. 2d at 1274; *see also Cooper*, 939 F. Supp. 2d, at 25 (law violates CDA where "rather than encouraging unfettered speech," it "imposes significant penalties for certain ads," and for plaintiffs, "preventing liability could amount to screening millions of advertisements").

   Notably, the Ordinance does not stop at requiring websites like HomeAway to verify that the host has included the applicable Conditional Use case file or permit number in a listing. It also appears to require HomeAway to verify that the rental properties comply with ***all "applicable legal requirements*****,**" Ordinance § 6.04.060(D), such as size and bedroom restrictions, residency requirements, and the installation of smoke detectors, *see* P.C.C. § 33.207. The Ordinance therefore creates the result Congress designed Section 230 to avoid: "Faced with potential liability" for each violation by an owner, "interactive computer service providers might choose to severely restrict the number and type of messages posted." *Zeran*, 129 F.3d at 331.

   ***Liability for Failing to Remove Unlawful Content.***   By permitting the City to assess a daily penalty—and not merely for a single act of publication—the Ordinance also penalizes HomeAway for failing to remove content. This, too, targets HomeAway's acts as a publisher. Congress enacted Section 230 to "protect websites against the evil of liability for failure to remove offensive content." *Roommates.com*, 521 F.3d at 1174. It is irrelevant that a website

Page 12 - MOTION FOR TEMPORARY RESTRAINING ORDER

knows or should know of the unlawful content, because to "impose liability on the basis of such conduct necessarily involves treating the liable party as a publisher of the content it failed to remove." *Barnes*, 570 F.3d at 1102-03; *see Gavra v. Google Inc.*, 2013 WL 3788241, at *2 (N.D. Cal. July 17, 2013) (CDA provides immunity where site "refrain[s] from removing objectionable content, despite receiving notice"). *See also Zeran*, 129 F.3d at 333 (notice-based liability would destroy "the vigor of Internet speech and . . . service provider self-regulation"); *Hill v. StubHub, Inc.*, 219 N.C. App. 227, 247-48 (2012) (site allowing ticket sales immune for claims it facilitated violation of scalping law; "knowledge of unlawful content does not strip a website of the immunity").

*Dictating the Construct and Operation of Websites*. The Ordinance also directly regulates HomeAway's decisions regarding the structure and operation of its websites. The Ordinance forces HomeAway to alter its website to provide a link to its Certificate of Authority to any visitor to HomeAway's site. Moreover, before allowing a host to publish a listing and avoid liability, platforms must verify whether the listing has been issued a license, and whether the rental is in compliance with ***all*** other aspects of City law, no matter how burdensome compliance with such an obligation would be. This includes, for example, verifying that ads posted on the site include an applicable number. The CDA does not allow the government to dictate the format, structure, or operation of a website. For example, in *Jane Doe No. 1 v. Backpage.com*, the plaintiffs challenged "choices that Backpage has made about the posting standards for advertisements" that were allegedly "designed to encourage sex trafficking," such as the lack of "phone number verification" for numbers in ads, the "option to anonymize e-mail addresses," and the site's "acceptance of anonymous payments." 817 F.3d at 16, 20-21. The First Circuit rejected the argument that such conduct was "distinguishable from publisher functions," holding that the CDA "extends to the formulation of precisely the[se] sort of website policies and practices." *Id*. at 20. Such features reflect "choices about what content can appear on the website and in what form," and "decisions in structuring [] website and posting

Page 13 - MOTION FOR TEMPORARY RESTRAINING ORDER

requirements are publisher functions entitled to section 230(c)(1) protection." *Id*. at 21-22; *see also Fields v. Twitter*, 2016 WL 4205687, at *7 (N.D. Cal. Aug. 10, 2016) (Twitter's "decisions to structure and operate itself as a 'platform . . . allowing for the freedom of expression'" generally available to all reflect CDA-protected "'choices about what [third-party] content can appear on [Twitter] and in what form'").  (Citation omitted.)

### C.  The Ordinance Violates the First Amendment

#### 1.  The Ordinance is an Improper Content-Based Restriction on Speech

HomeAway is also likely to succeed on its claim that the Ordinance violates the First Amendment.  The Ordinance seeks to proscribe and punish speech, in the form of advertisements and online rental listings, based on the content of that speech.  Such "content-based" restrictions on speech are subject to "heightened judicial scrutiny" under the First Amendment.  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011).  The Ordinance cannot survive this scrutiny.

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015).  The Ordinance is content-based because it seeks to impose restrictions, recordkeeping requirements, and potential liability on entities that publish advertisements based on the content of those advertisements—i.e., whether they advertise occupancy of a short-term rental.   Moreover, publishing "paid commercial advertisements" constitutes protected commercial speech. *Bigelow v. Virginia*, 421 U.S. 809, 818 (1975).[4]

"In the ordinary case, it is all but dispositive to conclude that a law is content-based."  *Sorrell*, 564 U.S. at 571.  Such laws are "presumptively unconstitutional," *Reed*, 135 S. Ct. at 2226, even when they pertain to commercial speech.  "Under a commercial speech inquiry it is the State's burden to justify its content-based law as consistent with the First Amendment."

---

[4] HomeAway does not concede the Ordinance regulates only commercial speech but analyzes it as though it does because the outcome is the same regardless.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Sorrell*, 564 U.S. at 571-72; *see Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564 (1980). The government must show "the statute directly advances a substantial government interest" and there is a "fit between the legislature's ends and the means chosen to accomplish those ends." *Sorrell*, 564 U.S. at 572; *see also Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 632 (1995) (law must be "narrowly tailored to achieve the desired objective"). "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993); *Pearson v. Edgar*, 153 F.3d 397, 401 (7th Cir. 1998).

The City cannot demonstrate the Ordinance is narrowly tailored to achieve a substantial interest. By its own terms, rather than operate "directly," *Sorrell*, 564 U.S. at 572, the Ordinance operates ***indirectly***: it aims to regulate the conduct of owners in Portland by targeting the activities of websites that host those owners' advertisements. This approach overlooks the Supreme Court's admonition that "[t]he normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it." *Bartnicki,* 532 U.S. at 529-30. Speech cannot "be suppressed in order to deter conduct by a non-law-abiding third party." *Id.*; *see also, e.g.*, *Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 637 (1980) (invalidating speech restriction where conduct "can be prohibited and the penal laws used to punish such conduct directly."). Here, the City could enforce its advertising restrictions directly against hosts who post the allegedly unlawful advertisements.

The City cannot explain why continued enforcement against these parties, as opposed to a restriction on speech against a publisher, does not suffice to achieve its aims without burdening speech. This disconnect between the State's aims and the speech-restrictive means chosen dooms the Ordinance under the First Amendment. *See, e.g.*, *Valle Del Sol Inc. v. Whiting*, 709 F.3d 808, 826-27 (9th Cir. 2013) (enjoining law where state did not show ineffectiveness of directly enforcing "preexisting" laws to address "safety concerns" instead of restricting speech);

Page 15 - MOTION FOR TEMPORARY RESTRAINING ORDER

*McKenna*, 881 F. Supp. 2d at 1284 (invaliding law based on "fail[ure] to demonstrate why a law targeting only the individuals who post ads would not be effective, rather than seeking to impose felony liability on online service providers"); *Cooper*, 939 F. Supp. 2d at 840.

The City may suggest that imposing registration requirements and potential liability on websites for publishing will make its regulatory scheme more effective and efficient in preventing unlawful conduct.  This contention is both wrong and insufficient under the First Amendment.  Enforcement against hosts would more directly advance the City's apparent goals of curtailing the owner conduct the Ordinance seeks to prohibit.  But the City has instead attempted to impose restrictions on every conduit for offering and finding a short-term rental— whether it be online travel sites such as HomeAway, free websites like Craigslist.com, or even newspaper classifieds.  *See* Ordinance §§ 6.04.010(B), (J) (defining a "Booking Agent," and therefore an "Operator," to include "*any Person* that provides a means through which a Host may offer a Short-Term Rental for transient lodging occupancy.").  *See Memphis Publ'g Co. v. Leech*, 539 F. Supp. 405, 411 (W.D. Tenn. 1982) (invalidating commercial speech restriction where it was "speculative" restriction would have its intended effect).

Moreover, even if the Ordinance *would* more efficiently help the City enforce its transient accommodations laws, that would not allow the Ordinance to survive First Amendment scrutiny.  The First Amendment precludes the government from restricting advertising and speech simply because it may be more politically or administratively convenient.  *See Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002) (speech restrictions must be "a necessary as opposed to merely convenient means of achieving [the government's] interests").  The City seeks to place the burden of verifying hosts' compliance with the law on HomeAway— a burden that is likely to be substantial, given the effort needed to screen each of hundreds of Portland listings, and one which could result in the suppression of vast amounts of protected speech.  *See* Furlong Decl. ¶ 17.  The government may not "shift[] the burden of enforcing the law from the taxpayer" to speakers or publishers of information simply because it is easier to do.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*News & Sun Sentinel Co. v. Bd. of Cnty. Comm'rs*, 693 F. Supp. 1066, 1072-73 (S.D. Fla. 1987) (invalidating law requiring newspaper to include contractors' license numbers in ads).

## 2. The Ordinance Imposes an Unconstitutional Prior Restraint

The Ordinance prohibits HomeAway and other publishers from publishing residential listings in the City unless it "has registered with the Division." *See* Ordinance § 6.040.060(D). The registration provisions present a classic prior restraint in violation of the First Amendment, because they vest in city officials the unfettered discretion to deny preemptively the right to publish on the Internet, without objective licensing criteria or required procedural safeguards.

A prior restraint exists when a law gives "public officials the power to deny use of a forum in advance of actual expression." *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975). "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). "'[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license,' must contain 'narrow, objective, and definite standards to guide the licensing authority." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992) (quoting *Shuttlesworth v. City of Birmingham*, 394 U.S. 150-51 (1969)). Therefore, "a law cannot condition the free exercise of First Amendment rights on the 'unbridled discretion' of government officials." *Desert Outdoor Advertising, Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) (citation omitted); *see also ACLU v. City of Las Vegas*, 333 F.3d 1092, 1107 (9th Cir. 2003) (holding ordinance unconstitutional where it "says nothing about how the power to regulate vending is to be wielded, and it is so lacking in standards that it provides no guidance as to the permit duration or frequency of reapplication"). Without such standards, "there is considerable danger that the content of prior speech, or simply the goals of an organization, might inform the permitting process." *ACLU*, 333 F.3d at 1107.

In *Moreno Valley*, for example, a city sign ordinance allowed City officials to determine if a sign would "have a harmful effect upon the health or welfare of the general public." *Id.* at

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

817.  As the Ninth Circuit noted, the sign ordinance "contain[ed] no limits on the authority of City officials to deny a permit," nor did it require City officials to "offer[] any evidence to support the conclusion that a particular structure or sign is detrimental to the community."  *Id.* at 818-19.  The Ninth Circuit ruled the ordinance unconstitutional.  *Id.* at 819.

In this case, the Ordinance restricts those who can engage in protected commercial speech—publishing short-term rental ads—solely to those who have "registered" under Section 6.04.060(A).  But that section provides the Division unfettered discretion as to what information it may require the Operator provide, permitting it to require any "information necessary to facilitate the collection of the Tax as the Division may require."  Ordinance § 6.04.060(A)  The concern does not end there.  The Ordinance provides no criteria to cabin the Division's discretion as to whether the information provided is sufficient, nor does it provide any method of appealing should the Division decide not to issue a Certificate of Authority.  In short, the Division "can deny a permit without offering any evidence to support [its] conclusion."  *Moreno Valley*, 103 F.3d at 819.  The Division could conceivably refuse to issue a Certificate of Authority to any publication it does not favor, without any explanation.  Without the protections the First Amendment requires, the Ordinance, like the ordinance in *Moreno Valley*, imposes an unconstitutional prior restraint.

### 3.     The Ordinance Impermissibly Imposes Civil Penalties Without a Scienter Requirement

The Ordinance also violates the First Amendment because it imposes civil penalties on publishers like HomeAway without requiring the government to show that the publisher **knew** the listing at issue was deemed unlawful by the City under the Ordinance.

The Supreme Court has long rejected the imposition of strict liability for the possession or dissemination of information, even where the content itself lacks First Amendment protection.  In *Smith v. California*, 361 U.S. 147 (1960), the Supreme Court struck down a Los Angeles ordinance making it a crime for booksellers to possess obscene books, noting the law would

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

require booksellers to review every book or face strict criminal liability, which "would tend to restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly." *Id.* at 153-54. The Court has said the same in later cases—the First Amendment bars imposing liability on publishers absent proof of *mens rea* that speech is, in fact, unlawful. *See New York v. Ferber*, 458 U.S. 747, 765 (1982) ("[C]riminal responsibility may not be imposed without some element of scienter on the part of the defendant."); *cf. United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994).[5]

The Ordinance violates this well-established principle. It imposes potentially severe penalties on publishers—up to $500 per day per rental unit per violation—without any requirement that HomeAway *know* a third-party listing is unlawful. For instance, the Ordinance makes it unlawful for any hosting platform to advertise that "an accessory Short Term Rental is available for Occupancy unless all applicable legal requirements allowing the Occupancy of a Short-Term Rental has been met." Ordinance § 6.04.060(D). But a listing might be non-compliant for several reasons—failure by the host to reside in the unit for the appropriate number of days, failure of the host to obtain a permit for an accessory short-term rental, or failure to provide smoke detectors or a functioning carbon monoxide alarm. *See* P.C.C. § 33.270. A publisher cannot possibly know whether a host has complied with the multitude of laws governing short-term rentals. *See* Furlong Decl. ¶ 14. The First Amendment prohibits the imposition of liability on this basis. *See Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 933 (9th Cir. 2004) ("A scienter requirement of knowledge as applied to an unknowable element cannot save a provision from constitutional invalidity."). Moreover, a host may post an ad without the appropriate number without the publisher's knowledge, as publishers (including

---

[5] The same principles apply in the civil context. *See, e.g., Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988) ("[A] rule that would impose strict liability on a publisher for [unprotected speech] would have an undoubted 'chilling effect.'") (citation omitted); *Manual Enters., Inc. v. Day*, 370 U.S. 478, 492-93 (1962) ("a substantial constitutional question would arise were we to construe [the law] as not requiring proof of scienter in civil proceedings").

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

HomeAway) do not necessarily review posts before publishing them.  Furlong Decl. ¶ 5.  As such, the City seeks to create a strict-liability regime for publishing ads for rentals that prove to be unlawful, even if the publisher has no knowledge of the violation.  The Ordinance therefore violates the First Amendment.

> **D.     The Stored Communications Act Preempts the Ordinance's Disclosure and Inspection Provisions.**

The Ordinance requires websites such as HomeAway to, upon demand, "provide all physical addresses" and "name and mailing addresses" of any user who offers transient lodging within Portland.  Ordinance § 6.04.040(B).  It also permits the Division to "examine during normal business hours the books, papers and accounting records relating to tax returns filed by any Operator" or, if no return is made, "to determine the amount [of tax] required to be made." Ordinance § 6.04.130(B).  These provisions conflict with and are preempted by the SCA.

"The SCA was enacted because the advent of the Internet presented a host of potential privacy breaches that the Fourth Amendment does not address."  *Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 900 (9th Cir. 2008), *rev'd on other grounds*, *City of Ontario v. Quon*, 560 U.S. 746 (2010) (citing Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 GEO. WASH. L. REV. 1208, 1209–13 (2004)). To protect the privacy of communications, the Act "creates a set of Fourth Amendment-like privacy protections by statute, regulating the relationship between government investigators and service providers in possession of users' private information."  Kerr, *A User's Guide*, at 1212. *See also Theofel v. Farey-Jones,* 359 F.3d 1066, 1072–73 (9th Cir. 2004) ("The Act reflects Congress's judgment that users have a legitimate interest in the confidentiality of communications in electronic storage at a communications facility.").

The statute accomplishes its aims by creating a range of restrictions on governments seeking user information from online providers.  These protections depend, in part, on whether an online provider is acting as an electronic communications service ("ECS") or a remote

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

computing service ("RCS") with regard to the information sought.  *See, e.g.*, 18 U.S.C. § 2703(a) (concerning government efforts to compel disclosure of contents of communications from ECS providers); § 2703(b) (same for RCS providers).  An ECS is "any service which provides to users thereof the ability to send or receive . . . electronic communications," and an RCS is "the provision to the public of computer storage or processing services by means of an electronic communications system."  18 U.S.C. § 2510(15), § 2711(2).  In simple terms, an ECS provides communication services to users and stores communications temporarily to transmit them, while an RCS stores and processes user information for longer periods.

An online provider may be both an ECS and an RCS, and HomeAway is both. HomeAway is an ECS provider for communications between listing owners and travelers through the online network it provides.  Furlong Decl. ¶¶ 6, 7.  *See, e.g.*, *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 980 (C.D. Cal. 2010) (social networking sites providing for messaging between users and for posts to user profiles were ECS providers); *Campbell v. Facebook Inc.* 2016 WL 2897936, at *11 (N.D. Cal. May 18, 2016) (same).  HomeAway is an RCS because it stores and processes information communicated by users, such as information provided by owners for listing their properties.  Furlong Decl. ¶ 10.  *See, e.g.*, *Crispin*, 717 F. Supp. 2d at 980 (social networking site that stores messages is an RCS provider); *Viacom Int'l, Inc. v. YouTube Inc.* 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (website that stores video content for users was an RCS provider).

Neither an ECS nor RCS may disclose even the most basic information, including a customer's name and address, absent a subpoena from the government.  Under 18 U.S.C. § 2702(a)(3), an RCS or ECS provider "shall not knowingly divulge a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications covered by paragraph (1) or (2)[6]) to any governmental entity."  The statute

---

[6] More stringent requirements govern disclosure of the contents of communications.  Although HomeAway believes the Ordinance may require it to disclose the contents of communications—

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

contains exceptions, which, in relevant part, permit disclosure "as otherwise authorized in section 2703." *Id.* § 2702(c)(1). Section 2703, in turn, permits the disclosure of basic information, such as a customer's name and address, source of payment, and other discrete categories, if the government uses an administrative, grand jury, or trial subpoena. *Id.* § 2703(c)(2). Thus, as the First Circuit has held, the "SCA clearly prohibits communications providers from disclosing to the government basic subscriber information—including a customer's name [and] address . . .—without a subpoena." *Telecommunications Regulatory Bd. of Puerto Rico v. CTIA-Wireless Ass'n*, 752 F.3d 60, 68 (1st Cir. 2014)

The Ordinance violates the SCA because it requires HomeAway and similar websites to disclose customer information without ***any*** process at all. Under Section 6.04.040(B), "***[u]pon request*** . . . Operators ***must*** provide all physical addresses of transient lodging occupancy locations . . . and the related contact information, including the name and mailing address of the general manager, agent, owner, Host or other responsible Person for the location." *Id.* § 6.04.040(B). Further, under Section 6.04.130(A) and (B), the Division may "examine during normal business hours the books, papers and accounting records relating to tax returns," which would include additional customer information, inasmuch as the tax is based on the amount paid by a customer for a rental. Because these provisions require HomeAway to disclose customer information absent a subpoena or other legal process—"directly conflict" with and are "thus preempted by the SCA." *CTIA*, 752 F.3d at 68.

## E.    HomeAway Faces Irreparable Harm Unless the Ordinance is Enjoined

For several reasons, HomeAway is likely to suffer irreparable harm absent an injunction.

---

because it must make available information to support transient lodging tax reports and that information may only be available from the content of customer communications, *see* Furlong Decl. ¶¶ 6-7—this Court need not reach this issue to find the Ordinance's recordkeeping and inspection requirements violate the SCA.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

***First***, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976). *See also Farris*, 677 F.3d at 868. Such harm to free speech is relevant both under the First Amendment and the CDA, which as the Ninth Circuit has held, "sought to further First Amendment . . . interests on the Internet." *Batzel*, 333 F.3d at 1028 (citing 141 Cong. Rec. H8469–72).

***Second***, HomeAway faces the threat of punishment under a preempted law, which constitutes irreparable harm. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("irreparable harm" where plaintiff "demonstrated a credible threat of prosecution" under preempted law); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) ("irreparable injury" where "attorneys general . . . made clear that they would seek to enforce" preempted law and plaintiffs faced "Hobson's choice" between "expos[ing] themselves to potentially huge liability" or "suffer[ing] the injury of obeying" law).

***Third***, the risk of hefty fines constitutes irreparable harm. The Ordinance authorizes fines of up to $500 for ***each*** violation ***each day***, i.e., each time HomeAway publishes an advertisement for a short-term rental that does not meet "all applicable legal requirements." Given that HomeAway publishes hundreds of listings in the City, Furlong Decl. ¶ 2, this could result in fines in the hundreds of thousands of dollars ***every day*** if even a fraction of listings do not meet the Ordinance's requirements. Courts have found irreparable harm based on fines of far less magnitude. *See, e.g.*, *Insight for Living Ministries v. Burwell*, 2014 WL 6706921, at *5 (E.D. Tex. Nov. 25, 2014) (ministry challenging regulation requiring group health plans and health insurance issuers to cover contraception would suffer irreparable harm if it were "forced to litigate its constitutional claims under the overwhelming weight of substantial fines for its noncompliance," where fines were $100 per day for each individual to whom coverage was denied and additional fines upon notice); *Oklahoma v. United States*, 994 F. Supp. 1358, 1364 (W.D. Okla. 1997), *reversed on other grounds*, 161 F.3d 1266 (10th Cir. 1998) (state would

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

suffer irreparable harm if forced to pay $5,000 per day for failing to comply with allegedly unconstitutional federal statute); *Satellite Television of N.Y. Assocs. v. Finneran*, 579 F. Supp. 1546, 1551 (S.D.N.Y. 1984) (irreparable harm "readily" shown where plaintiff was "faced with a choice of" complying or incurring "fine of $2,000 a day").

*Fourth*, the Ordinance will cause irreparable harm because it will disrupt HomeAway's operations and threatening a loss of consumer goodwill. Again, the law would force HomeAway to ensure that each property in a listing complies with "all applicable legal requirements" and has an appropriate number in the listing. Given the volume of listings on HomeAway's websites and the continual addition and modification of listings, this would require HomeAway to change its platforms, expend significant resources, and significantly delay the availability of rental advertisements. *See* Furlong Decl. ¶¶ 13, 14, 15, 17. Verifying that each listing has a required number—and determining whether the rental meets "all applicable legal requirements" for occupancy—would require employees to verify information from users and the City for each listing, requiring substantial financial and personnel resources. *See id.* These changes themselves would likely repel users and result in a loss of goodwill. *See id.*

Given this, HomeAway likely would have no choice but to screen and remove listings from its platforms altogether, including lawful ones. Furlong Decl. ¶ 17. The resulting loss of consumer trust and goodwill constitutes irreparable harm. *Am. Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009) (irreparable harm exists where preempted law will cause "part of" plaintiff's "business" and "goodwill" to "evaporate"); *Mahroom v. Best W. Int'l, Inc.*, 2009 WL 248262, at *3 (N.D. Cal. Feb. 2, 2009) ("[m]ajor disruption of a business" threatening "goodwill" is "irreparable harm").

### F. The Balance of Equities Tips in HomeAway's Favor.

The balance of equities tips decidedly in favor of HomeAway. HomeAway faces deprivation of its constitutional rights, which far outweighs any harm the City might claim. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). Harms to HomeAway in the

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

form of impending civil penalties, as well as lost goodwill, also weigh in its favor. The City can claim little harm to outweigh these significant injuries. Indeed, the City does not face disruption of established practices. *McKenna*, 881 F. Supp. 2d at 1286 ("harm to the government [is not] great" where "'[n]o prosecutions have yet been []taken'").

The public interest also favors HomeAway. The public interest is served by "the Constitution's declaration that federal law is to be supreme." *Am. Trucking* 559 F.3d at 1059-60; *see Bank One, Utah v. Guttau*, 190 F.3d 844, 847-48 (8th Cir. 1999) ("public interest will perforce be served by enjoining the enforcement of [preempted] state law"). In addition, "'it is always in the public interest to prevent the violation of a party's constitutional rights.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). It also is in the public interest to protect HomeAway from civil liability and lost consumer goodwill resulting from unlawful regulation. By contrast, an injunction would not prevent the City from enforcing its laws against non-compliant hosts.[7]

## IV. CONCLUSION

For these reasons, HomeAway respectfully requests that the Court grant its motion for a temporary restraining order.

DATED this 23rd day of January, 2017.

**DAVIS WRIGHT TREMAINE** LLP

By  s/ Gregory A. Chaimov
Gregory A. Chaimov, OSB #822180
gregorychaimov@dwt.com

---

[7] Any order this Court enters should provide that the City may not retroactively enforce the Ordinance if the TRO is ultimately dissolved. The City, in conversations with counsel for HomeAway, has suggested otherwise. Doran Decl. ¶ 2 & Ex. 1. Otherwise, HomeAway could not rely on the order to continue exercising its rights to free speech, because the City could simply impose penalties after-the-fact.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Telephone:  503-778-5328
Tim Cunningham, OSB #100906
timcunningham@dwt.com
Telephone:  503-778-5386
Facsimile:  503-778-5299

James C. Grant (*pro hac vice* application pending)
jimgrant@dwt.com
Ambika K. Doran (*pro hac vice* application pending)
ambikadoran@dwt.com
Tom Wyrwich (*pro hac vice* application pending)
tomwyrwich@dwt.com
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
Telephone: (206) 757-8096
Facsimile: (206) 757-7096

Attorneys for Plaintiff HomeAway.com, Inc.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

**CERTIFICATE OF SERVICE**

I hereby certify that I served a copy of the foregoing **HOMEAWAY.COM, INC.'S**

**MOTION FOR TEMPORARY RESTRAINING ORDER** on:

> J. Scott Moede
> Portland Office of City Attorney
> 1221 SW 4th Ave., Ste. 430
> Portland OR  97204
> Email: scott.moede@portlandoregon.gov
>
> Of Attorneys for Defendant

☒    by causing a copy thereof to be emailed to said attorney's address on the date set forth below, after said attorney consented to service by email.

Dated this 23rd day of January, 2017.

DAVIS WRIGHT TREMAINE LLP

By  s/ Tim Cunningham
    Gregory A. Chaimov, OSB #822180
    gregorychaimov@dwt.com
    Telephone:  503-778-5328
    Tim Cunningham, OSB #100906
    timcunningham@dwt.com
    Telephone:  503-778-5386
    Facsimile:   503-778-5299

    James C. Grant (*pro hac vice* application pending)
    jimgrant@dwt.com
    Ambika K. Doran (*pro hac vice* application pending)
    ambikadoran@dwt.com
    Tom Wyrwich (*pro hac vice* application pending)
    tomwyrwich@dwt.com
    1201 Third Avenue, Suite 2200
    Seattle, Washington  98101
    Telephone: (206) 757-8096
    Facsimile: (206) 757-7096

    Attorneys for Plaintiff HomeAway.com, Inc.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax