**GREGORY A. CHAIMOV**, OSB #822180
gregorychaimov@dwt.com
**TIM CUNNINGHAM**, OSB #100906
timcunningham@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 SW 5th Ave, Ste 2400
Portland, Oregon 97201-5610
Telephone: 503-241-2300
Facsimile: 503-778-5299

**JAMES C. GRANT** (admitted *pro hac vice*)
jamesgrant@dwt.com
**AMBIKA K. DORAN** (admitted *pro hac vice*)
ambikadoran@dwt.com
**TOM WYRWICH** (admitted *pro hac vice*)
tomwyrwich@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1201 Third Avenue, Suite 2200
Seattle, Washington 98101
Telephone: 206-622-3150
Facsimile: 206-757-7700

Attorneys for Plaintiff HomeAway.com, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AT PORTLAND

| | |
|---|---|
| HOMEAWAY.COM, INC., | Case No. 3:17-cv-00091-MO |
| Plaintiff, | |
| v. | **HOMEAWAY.COM, INC.'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| CITY OF PORTLAND, | |
| Defendant. | |

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................. 2

   A.   The City Concedes that the Communications Decency Act Preempts the
        Provisions of the Ordinance that Impose Requirements and Penalties on
        Websites for Hosts' Listings (PCC §§ 6.04.060(B) and (D), and 6.04.170(F)
        and (G)) ........................................................................................................... 2

   B.   The Court Should Enjoin PCC § 6.04.060(A) under the CDA and First
        Amendment ..................................................................................................... 3

   C.   The Stored Communications Act Preempts PCC §§ 6.04.040(B),
        6.04.130(B), and 6.04.170(E). ..................................................................... 3

        1.   The SCA provides Fourth Amendment-like protections for Internet
             communications and users. ............................................................... 3

        2.   HomeAway is an electronic communications service provider and
             remote computing service provider under the SCA. ......................... 5

        3.   The Ordinance requires HomeAway to violate its obligations under
             the SCA. ............................................................................................. 8

   D.   HomeAway Has Met the Remaining Standards for a Preliminary Injunction ...... 11

        1.   HomeAway will suffer irreparable harm absent an injunction. ............... 11

        2.   The balance of equities and public interest favor HomeAway. ............... 13

   E.   The Court Should Not Require Any Security ...................................................... 15

III.  CONCLUSION ........................................................................................................ 16

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baca v. Moreno Valley Unified Sch. Dist.*,
   936 F. Supp. 719 (C.D. Cal. 1996) ...................................................15

*Becker v. Toca*,
   2008 WL 4443050 (E.D. La. Sept. 26, 2008) .........................................7

*Bojorquez v. Wells Fargo Bank, NA*,
   2013 WL 6055258 (D. Or. Nov. 7, 2013)................................................3

*Brown Jordan Int'l, Inc. v. Carmicle*,
   846 F.3d 1167 (11th Cir. 2017) ..........................................................6

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
   563 F.3d 847 (9th Cir. 2009) ............................................................13

*Campbell v. Facebook Inc.*,
   315 F.R.D. 250 (N.D. Cal. 2016).........................................................6

*City of Los Angeles. v. Patel*,
   __ U.S. __, 135 S. Ct. 2443 (2015)......................................................5

*Crispin v. Christian Audigier, Inc.*,
   717 F. Supp. 2d 965 (C.D. Cal. 2010) ..................................................6

*Crowley v. CyberSource Corp.*,
   166 F. Supp. 2d 1263 (N.D. Cal. 2001) ................................................7

*Dyer v. Nw. Airlines Corps.*,
   334 F. Supp. 2d 1196 (D.N.D. 2004).....................................................7

*Edge Wireless, LLC v. U.S. Cellular Corp.*,
   312 F. Supp. 2d 1325 (D. Or. 2003) ...................................................16

*Elrod v. Burns*,
   427 U.S. 347 (1976)........................................................................12

*Fanus v. Premo*,
   2014 WL 5280027 (D. Or. Oct. 10, 2014)..............................................11

*Ga. Latino Alliance for Human Rights v. Governor of Ga.*,
   691 F.3d 1250 (11th Cir. 2012) ..........................................................12

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Garrett v. City of Escondido*,
   465 F. Supp. 2d 1043 (S.D. Cal. 2006)......................................................................16

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) ........................................................................15, 16

*K.F. Jacobsen & Co. v. Gaylor*,
   947 F. Supp. 2d 1120 (D. Or. 2013) ...................................................................7

*LaDuke v. Nelson*,
   762 F.2d 1318 (9th Cir. 1985) ...........................................................................12

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .............................................................................12

*Mercer, Fraser Co. v. County of Humboldt*,
   2008 WL 4344523 (N.D. Cal. Sept. 22, 2008) .....................................................15

*Nat. Res. Def. Council, Inc. v. Morton*,
   337 F. Supp. 167 (D.D.C. 1971) ........................................................................16

*Nemeth v. Ellena*,
   2015 WL 2375982 (D. Or. May 18, 2015) .............................................................3

*O'Grady v. Superior Court*,
   139 Cal. App. 4th 1423 (2006) ............................................................................8

*Oakland Tribune, Inc. v. Chronical Publishing Co.*,
   762 F.2d 1374 (9th Cir. 1985) ...........................................................................13

*Peace Action of Wash. v. City of Medina*,
   2000 WL 33959359 (W.D. Wash. Nov. 3, 2000) ...................................................15

*Qualcomm, Inc. v. Motorola, Inc.*,
   185 F.R.D. 285 (S.D. Cal. 1999) ........................................................................16

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) .............................................................................12

*TAP Worldwide, LLC v. Becker*,
   2010 WL 2757354 (C.D. Cal. July 12, 2010)........................................................16

*Telecomms. Regulatory Bd. of P. R. v. CTIA-Wireless Ass'n*,
   752 F.3d 60 (1st Cir. 2014)................................................................................10

*Tex. Midstream Gas Servs. LLC v. City of Grand Prairie*,
   608 F.3d 200 (5th Cir. 2010) .............................................................................13

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Theofel v. Farey-Jones,*
   359 F.3d 1066 (9th Cir. 2004) ................................................................7

*TLS Mgmt. v. Rodriguez-Toledo,*
   __ F. Supp. 3d __, 2016 WL 7413482 (D. P.R. Dec. 22, 2016)........................6

*In re United States,*
   665 F. Supp. 2d 1210 (D. Or. 2009) .......................................................3

*United States v. Oregon,*
   675 F. Supp. 1249 (D. Or. 1987) ..........................................................15

*United States v. Wilson,*
   2016 WL 6683268 (D.D.C. Nov. 14, 2016) ..............................................6

*Valle del Sol v. Whiting,*
   2012 WL 8021265 (D. Ariz. Sept. 5, 2012), *aff'd*, 732 F.3d 1006 (9th Cir.
   2013) .......................................................................................13

*Viacom Int'l Inc. v. YouTube Inc.,*
   253 F.R.D. 256 (S.D.N.Y. 2008) ..........................................................8

*Watkins v. City of Arlington,*
   2014 WL 3408040 (N.D. Tex. July 14, 2014) ...........................................16

*Winter v. Nat. Res. Def. Council, Inc.,*
   555 U.S. 7 (2008) ..........................................................................11

**Federal Statutes**

18 U.S.C.
   § 2510(12)..................................................................................6
   § 2510(15)..................................................................................6
   § 2701.....................................................................................10
   § 2701(a)...................................................................................7
   § 2701(c)..................................................................................10
   § 2702(a)................................................................................8, 11
   § 2702(a)(3)...............................................................................11
   § 2702(c)(2)...............................................................................14
   § 2703.....................................................................................4
   § 2703(b)(1)(A)............................................................................4
   § 2703(b)(1)(B)(ii)........................................................................4
   § 2703(c)(2)...................................................................4, 5, 9, 10
   § 2703(d)................................................................................4, 9
   § 2711(1)...................................................................................6
   § 2711(2)...................................................................................7

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

47 U.S.C. § 230 ..................................................................................................1, 2, 3, 14

**State Statutes**

Portland City Code
    § 6.04.040(B) ............................................................................................. *passim*
    § 6.04.060(B) .......................................................................................................2, 3
    § 6.04.060(D) ..........................................................................................................2
    § 6.04.130(B) ............................................................................................. *passim*
    § 6.04.170(E) ..........................................................................................................3
    § 6.04.170(F) ..........................................................................................................2
    § 6.04.170(G) ..........................................................................................................2

**Rules**

Fed. R. Civ. P. 65(c) ...........................................................................................15

**Constitutional Provisions**

U.S. Const. amend. I ..............................................................................1, 3, 12, 15

U.S. Const. amend. IV ..................................................................................3, 5, 15

U.S. Const. amend. V ......................................................................................5

**Other Authorities**

Office of Legal Education, Executive Office for United States Attorneys,
    *Searching and Seizing Computers and Obtaining Electronic Evidence in*
    *Criminal Investigations* (2009) ...........................................................................3, 6

Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a*
    *Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208 (2004) .................................4

U.S. Department of Justice, *Electronic Communications Privacy Act of 1986* ..............................4

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main ∙ (503) 778-5299 fax

# I. INTRODUCTION

The City now concedes that Section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230 ("Section 230"), preempts the parts of its Ordinance that purport to penalize HomeAway and other websites if they publish online listings that do not include permit numbers for hosts' properties. This belated concession is frustrating—eighteen months ago, the City imposed $330,000 in fines against HomeAway under the Ordinance, and then filed suit to collect those fines—but it is correct. The Court should accept the City's agreement that these provisions be enjoined permanently. *See* City's Response (Dkt. 30, "Resp.") at 4, 7.

While the City's concession resolves the CDA violations in one respect, the City ignores another part of the Ordinance that Section 230 also preempts and that HomeAway moved to enjoin—Portland City Code § 6.04.060(A), which requires websites like HomeAway to register with the City before publishing ***any*** listings provided by hosts. That provision seeks to regulate such websites for acting as publishers of third-party listings by imposing fines of up to $500 per day if they fail to obtain advance permission from the City to publish. This violates both Section 230 and the First Amendment, because it poses an impermissible prior restraint. Mot. (Dkt. 7) at 10-11, 17-18. The City offers no response to HomeAway's motion in this regard, and the Court can and should grant the preliminary injunction on this basis, as well as on the merits.

After conceding or not opposing the CDA issues, the City's Response focuses on the portions of the Ordinance that allow it to demand information about users and their transactions and communications through the HomeAway website. The Ordinance flouts the Stored Communications Act, 18 U.S.C. § 2701 *et seq.*, by purporting to allow the City to obtain user communications and information from HomeAway without any process ***at all***.

Absent an injunction, HomeAway and its users will suffer irreparable harm by being subjected to a law that violates constitutional rights of free speech, invades privacy, and is preempted. On the other hand, the City will suffer no discernible harm. It has means to enforce

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

its Ordinance directly against hosts instead of trying to impose the burden of policing and enforcement on websites like HomeAway.

All of the relevant factors support granting a preliminary injunction against enforcement of the portions of the Ordinance that the City has not already conceded are unenforceable. The Court should grant HomeAway's motion for preliminary injunction in its entirety.

## II.    ARGUMENT

A.    **The City Concedes that the Communications Decency Act Preempts the Provisions of the Ordinance that Impose Requirements and Penalties on Websites for Hosts' Listings (PCC §§ 6.04.060(B) and (D), and 6.04.170(F) and (G))**

Since 2015, the City has claimed that HomeAway has violated Portland City Code ("PCC") 6.04.060(D) and 6.04.170(G) by publishing listings that do not include information about hosts' city permits, and that the CDA did not preclude the City from seeking over $330,000 in fines for these alleged violations. *See City of Portland v. HomeAway.com, Inc.*, No. 3:15-cv-01984-MO, Dkt. 18 at 28-29 (the "CDA does not apply … where the City Code merely requires operators and booking agents to display health-and-safety permit information"); Dkt. 44 at 30-31 (same).[1] Now, in an about-face—and after forcing HomeAway to incur significant expense—the City concedes that "Section 230 of the Communications Decency Act bars enforcement of PCC 6.04.060 (B) and (D), and PCC 6.04.170 (F) and (G)" and "enforcement of those particular City Code provisions … may be enjoined." Resp. at 4. *See also id.* at 6 (the City "acknowledges that … PCC 6.04.060 (B) and (D), and PCC 6.04.170 (F) and (G), treat HomeAway as the publisher of content provided by third parties"). In view of that concession and the well-established authority under Section 230—on which the City relies, Resp. at 6—the Court should enjoin enforcement of these sections, and should do so permanently.

---

[1] Although the City's lawsuit against HomeAway concerns provisions of the Ordinance before they were amended, those provisions are materially the same: both require the inclusion of certain information in listings. *See* Doran Decl. (Dkt. 9) Ex. 2 §§ 6.04.060(D) and 6.04.170 (G).

Page 2 - REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**B.      The Court Should Enjoin PCC § 6.04.060(A) under the CDA and First Amendment.**

In its motion, HomeAway also challenged PCC § 6.04.060(A), which requires it to "register with the [Revenue] Division [of the Bureau of Revenue and Financial Services]" before publishing listings.  That section also treats HomeAway as the publisher or speaker of third-party listings, in violation of the CDA.  *See* Mot. at 1, 10-11.  Indeed, imposing a registration requirement on websites before they can publish any third-party content at all is a blatant intrusion on publishing activities, contrary to Section 230's protections and intent.  The registration requirements also impose a classic prior restraint on publication, in violation of the First Amendment, because they give City officials unfettered discretion to deny preemptively an online provider's rights to publish on the Internet.  *See id.* at 2, 17-18.

The City ignores HomeAway's challenges to this provision.  The Court can and should deem the City to have conceded these issues.  *See Bojorquez v. Wells Fargo Bank, NA*, 2013 WL 6055258, at *5 (D. Or. Nov. 7, 2013) ("[I]f a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.") (internal quotation marks, alterations omitted); *Nemeth v. Ellena*, 2015 WL 2375982, at *4 (D. Or. May 18, 2015).  For this reason, and on the merits, the Court should enjoin enforcement of PCC § 6.04.060(A).

**C.      The Stored Communications Act Preempts PCC §§ 6.04.040(B), 6.04.130(B), and 6.04.170(E).**

**1.      The SCA provides Fourth Amendment-like protections for Internet communications and users.**

The SCA was "intended to codify overarching Fourth Amendment protections into a specific statute."  *In re United States*, 665 F. Supp. 2d 1210, 1222 (D. Or. 2009).  To that end, the law "sets forth a system of statutory privacy rights for customers and subscribers of computer network service providers."  Office of Legal Education, Executive Office for United States Attorneys, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal*

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Investigations*, at 115 (2009), https://www.justice.gov/sites/default/files/criminal-ccips/legacy/ 2015/01/14/ssmanual2009.pdf (attached as Exhibit A).[2]

Section 2703 of the SCA "provides the rules that the government must follow when it seeks to compel a provider to disclose information." Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1218 (2004). The law provides different levels of protections—and imposes different requirements for process and judicial oversight—based on the type of information the government seeks from the provider of an electronic communications service ("ECS") or a remote computing service ("RCS"). The government may obtain some information from such providers with a subpoena, other information with a special court order, and still other information with a search warrant. U.S. Department of Justice, *Electronic Communications Privacy Act of 1986* (2013), https://it.ojp.gov/PrivacyLiberty/authorities/statutes/1285.

For example, to obtain the contents of a user's communications through a website without notice to the user, the government must get a search warrant. 18 U.S.C. § 2703(b)(1)(A). Alternatively, the government may seek disclosure of communications ***with notice*** to affected users if it obtains a court order, which requires it to demonstrate "specific and articulable facts showing that there are reasonable grounds to believe" the contents "are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(b)(1)(B)(ii); § 2703(d). On the other hand, the government can seek basic information about a customer or subscriber to a website by way of a subpoena, but this is limited to the customer's name, address, length of service, account number, and means of payment. *Id.* § 2703(c)(2).

---

[2] The SCA is a part of the Electronic Communications Privacy Act ("ECPA"), which also addresses wiretapping, pen registers, and trap-and-trace devices. *See* U.S. Department of Justice, *Electronic Communications Privacy Act of 1986*, https://it.ojp.gov/PrivacyLiberty/authorities/ statutes/1285.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Although different circumstances trigger different rules under Section 2703, there is one constant: the government cannot obtain information from an ECS or RCS provider about users or their communications without providing *some* due process consistent with Fourth and Fifth Amendments principles. *Cf. City of Los Angeles. v. Patel*, __ U.S. __, 135 S. Ct. 2443, 2451-54 (2015) (ordinance requiring hotels to provide guest registries to police on demand and without a warrant violated the Fourth Amendment). Thus, with few exceptions, the government cannot require a website that acts as an ECS or RCS provider to disclose user communications or information without notice to the affected users. Even when a government can request basic subscriber information from a website without notice to users, it must do so by way of a proper subpoena, which allows recourse to a court to challenge the demands as beyond the scope of Section 2703(c)(2) or otherwise oppressive, burdensome, or improper.

The SCA's requirements ensure that individuals using the Internet to communicate and enter into transactions with others will not unknowingly have their privacy invaded by government authorities demanding disclosure of their communications or information from the website through which they communicated. PCC §§ 6.04.040(B) and 6.04.130(B) provide no such assurances, and they are preempted by the SCA.

> ## 2. HomeAway is an electronic communications service provider and remote computing service provider under the SCA.

The City argues that "HomeAway does not point to any evidence" it is either an RCS or ECS provider, citing cases in which courts held the SCA did not apply when users directly purchased goods or services from online sellers. Resp. at 10. The City fundamentally misunderstands the nature of websites like those of HomeAway, which provide a forum for third-party users to connect, communicate, and enter into transactions on their own. In providing an online marketplace, HomeAway is both an ECS and RCS provider.

HomeAway provides a forum that allows hosts to list and guests to find accommodations and arrange rentals. Furlong Decl. (Dkt. 8) ¶ 2. Hosts and guests do this by communicating

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

directly, including through HomeAway's websites and HomeAway Secured Communication, a private messaging service on the websites. *Id.* ¶ 6. HomeAway's websites enable, host, and store communications between users. *See id.* ¶ 10 (HomeAway stores "extensive amounts of information and data" supplied by and exchanged between hosts and guests). HomeAway promises customers this information will remain private and takes measures to safeguard it, assuring it will be disclosed to the government only after lawful process. *See id.* ¶ 11.

Because HomeAway provides means for users to communicate with each other through its websites, it is an ECS provider. An "ECS" is "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15); *see* 18 U.S.C. § 2711(1) (incorporating the definitions into SCA).[3] "Any company … that provides others with the means to communicate electronically can be a 'provider of electronic communication service' relating to the communications it provides, regardless of the entity's primary business or function." Office of Legal Education, *Searching and Seizing Computers and Obtaining Electronic Evidence in Criminal Investigations*, *supra*, at 117 (citing cases).

Courts have applied the SCA where, as here, a provider allows users to communicate with one another, including social-networking websites such as Facebook and MySpace, *see Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 980 (C.D. Cal. 2010), *Campbell v. Facebook Inc.*, 315 F.R.D. 250, 265 (N.D. Cal. 2016); online file-sharing systems like Dropbox, *TLS Mgmt. v. Rodriguez-Toledo*, __ F. Supp. 3d __, 2016 WL 7413482, at *5 (D. P.R. Dec. 22, 2016), *United States v. Wilson*, 2016 WL 6683268, at *2 (D.D.C. Nov. 14, 2016); and a cloud-based email management and storage system, *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167 (11th Cir. 2017).

---

[3] An "electronic communication" is "any transfer of … data … of any nature transmitted in whole or in part by a wire … [or] electromagnetic … system." 18 U.S.C. 2510(12). The City does not dispute that HomeAway provides features that allow users to communicate with one another through its websites.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The City relies on cases concerning purchases by users directly from online sellers, which have held that, in that circumstance, websites are not necessarily ECS providers. Resp. at 10-12. The City's argument is, at best, an effort at misdirection. A customer purchasing a product from Walmart.com is communicating and transacting with Walmart directly; she is not communicating **through** Walmart's website to connect with and potentially enter into a transaction with another third party. In that context, Walmart is not acting as an ECS provider. In contrast, hosts and guests communicate through HomeAway to enter into transactions with each other, and HomeAway provides the forum and tools for them to do so. The cases the City cites, Resp. at 9-10, which concern purchases by customers directly from online retailers, are thus irrelevant.[4] The City fundamentally misunderstands the difference between websites that directly sell to customers, and ones that provide forums for third-party communications and transactions. "[A]n online business or retailer may be considered an electronic communication service provider if the business has a website that offers customers the ability to send messages or communications to third parties." *Becker v. Toca*, 2008 WL 4443050, at *4 (E.D. La. Sept. 26, 2008). This is what HomeAway offers its users and why it is an ECS provider.

HomeAway is also an RCS provider. An RCS provides "the public … computer storage or processing services by means of an electronic communications system." 18 U.S.C. § 2711(2). While an ECS allows customers to transmit communications to each other, an RCS allows them to store such communications and other information. HomeAway "collect[s] and retain[s]

---

[4] *See Dyer v. Nw. Airlines Corps.*, 334 F. Supp. 2d 1196, 1198-99 (D.N.D. 2004) (airline was not an ECS provider when it sold tickets through its website to a consumer); *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1270 (N.D. Cal. 2001) (Amazon was not an ECS provider when it sold a product through its website to a customer). Other cases the City cites are also inapplicable. For example, *K.F. Jacobsen & Co. v. Gaylor*, 947 F. Supp. 2d 1120, 1126 (D. Or. 2013), did not concern an online business, but an asphalt manufacturer, and rejected the manufacturers' claim that its computers were "facilities through which [ECS] are provided." Here, it is HomeAway's website through which HomeAway provides an ECS. *Theofel v. Farey-Jones*, 359 F.3d 1066 (9th Cir. 2004), does not, as the City claims, suggest a "limit" on the SCA's protections. And both cases concern 18 U.S.C. § 2701(a), which is not at issue here.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

extensive amounts of information and data supplied by listing owners and travelers," including "information provided by owners for each of their listings, communications between owners and travelers through the website, information stored for and accessible by users in their accounts … and data about online reservations and use of the online payment feature." Furlong Decl. ¶ 10. HomeAway is an RCS provider because it electronically stores and processes information communicated by users, including listings, messages, and transactions with other users, and account and payment information. *See* Furlong Decl. ¶ 10. HomeAway retains and stores this information to enable users to enter into future online transactions. *See id.*; *see also O'Grady v. Superior Court*, 139 Cal. App. 4th 1423, 1437, 1440 (2006) (company provided RCS where it stored the content of email accounts); *see also Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D. 256, 264 (S.D.N.Y. 2008) (a website that stores video content for users provides RCS). In doing so, HomeAway is an RCS provider, and the City offers no argument or evidence to the contrary.

Because HomeAway is an ECS and RCS provider, it may not divulge customer communications or information to government authorities absent the requisite process. *See* 18 U.S.C. §2702(a).

> ### 3. The Ordinance requires HomeAway to violate its obligations under the SCA.

As the City acknowledges, the SCA protects the privacy of Internet users by requiring a warrant before the City may obtain "the contents of a wire or electronic communication," and "***at least*** 'an administrative subpoena'" to compel disclosure of basic information, such as names and address[es]." Resp. at 9 (emphasis added). However, the City then contends that PCC §§ 6.04.040(B) and 6.04.130(B) require websites like HomeAway to divulge information about users and their listings and transactions that occur through such websites without ***any*** process at all. Resp. at 7-12. These provisions violate the SCA.

The City asserts that PCC § 6.04.040(B) "requires HomeAway only to report, 'upon request' and for 'regulatory or tax administration purpose[],' ***where it operates in the City of***

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

*Portland*, along with 'the related contact information … of the general manager, agent, owner, or host for the location.'" Resp. at 11. Yet HomeAway does not have *any* operations in Portland; it operates websites that permit hosts to connect with guests. The City cannot evade the SCA simply by deeming users' communications and transactions to be records of HomeAway's "operations" in the city. Such an interpretation would eviscerate the SCA and Congress's intent.

In its Response, the City suggests that PCC §§ 6.04.040(B) and 6.04.130(B) require websites like HomeAway to disclose only basic subscriber information permitted under the SCA. Resp. at 15. This is wrong in two respects. First, the SCA permits governments to obtain such information only by a lawful subpoena, allowing notice to affected users and an opportunity to challenge the demands in a judicial proceeding. 18 U.S.C. §§ 2703(c)(2). PCC §§ 6.04.040(B) and 6.04.130(B) instead require websites to provide and make available any records the City demands "[u]pon request" for examination at any time "during normal business hours," *without* any subpoena or judicial oversight. Second, these provisions seek to compel websites to provide more than the basic subscriber information allowed with a subpoena (e.g., the name, address, account number and payment information for a subscriber). PCC §§ 6.04.040(B) and 6.04.130(B) compel disclosure of the property addresses of all hosts' listings, contact information for the "general manager, agent, owner," host, or other person responsible for the rental, and all other information the City may demand to "verify the accuracy" of tax filings, which the City makes clear would include records of all rental transactions and payments. This goes well beyond the basic subscriber information the City might obtain by way of subpoena (although the Ordinance does not even require a subpoena), and may be obtained under the SCA only by warrant or court order.[5] Because PCC §§ 6.40.040(B) and 6.04.130(B) require HomeAway to disclose information provided by hosts without requiring the government to

---

[5] Indeed, HomeAway has explained that the City could remedy flaws of the Ordinance, at least in part, by following the subpoena requirements of 18 U.S.C. § 2703(c)(2).

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

provide **any** process, they are preempted. *See Telecomms. Regulatory Bd. of P. R. v. CTIA-Wireless Ass'n*, 752 F.3d 60, 68 (1st Cir. 2014) (the "SCA clearly prohibits communications providers from disclosing to the government basic subscriber information—including a customer's name [and] address …—without a subpoena").

The City otherwise cites an irrelevant provision of the SCA, 18 U.S.C. § 2701, to contend the Act "does not apply to any entity that is itself an intended user or recipient of information." Resp. at 9. That section criminalizes intentional interception of online communications, expanding prior wiretapping definitions. HomeAway does not allege any wiretapping occurred here and has not relied on Section 2701 in any respect, so it is completely irrelevant that the section precludes a party who authorized a communication from asserting a wiretapping claim. *See* 18 U.S.C. § 2701(c). *See also* Resp. at 8 (misinterpreting Section 2701 to assert the SCA only includes claims "against anyone who intentionally accesses without authorization a facility through which an electronic communication service is provided" (quotation marks omitted)).

From this mistaken premise, the City asserts that it may require HomeAway to provide all information about users and their communications and transactions because HomeAway received this information. *See* Resp. at 11 (asserting that information about users and their communications "might overlap, like the circles of a Venn diagram" with users' submissions to HomeAway); *id.* at 12 (the "address of rentals and related contact information [] is information that HomeAway itself requests from its hosts"). That HomeAway collects information from users and stores it to allow them to transact with one another does not give the City carte blanche to demand it without process. The SCA's requirements would be meaningless under the City's reading because the City (or any government authority) could always contend that user information and communications through a website were provided **to** the website, and therefore the protections of the SCA do not apply. This is not the law. *See Telecomms. Regulatory Bd. Of Puerto Rico*, 752 F.3d at 65 (rejecting argument that SCA "regulates only transactional records

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

and information related to communications, not basic subscriber information untethered to specific communications.")

The City suggests that under HomeAway's interpretation, "an employer that provides e-mail service to its employees and the public—such as Google or Yahoo!—would be barred by the SCA from reporting the names of its employees to the IRS for payroll-tax purposes." Resp. at 11-12. This, too, mischaracterizes the SCA and its protections. In the hypothetical the City suggests, Google and Yahoo would be free to provide the government information they have in their capacities as employers, but this has nothing to do with their roles as ECS or RCS providers for customer communications through their services. *See* 18 U.S.C. § 2702(a) (prohibitions applicable to "a person or entity providing" ECS or RCS "to the public"); 18 U.S.C. § 2702(a)(3) (such provider prohibited from divulging information pertaining "to a subscriber to or customer of such service"). Here, the Ordinance targets information HomeAway has in its capacity as an ECS or RCS provider, and the SCA prohibits the government from obtaining that information without any process.

### D.     HomeAway Has Met the Remaining Standards for a Preliminary Injunction.

Once HomeAway shows a likelihood of prevailing on the merits, as it has, the remaining factors to obtain a preliminary injunction are "much less significant." *Fanus v. Premo*, 2014 WL 5280027, at *4 (D. Or. Oct. 10, 2014). *See also* Resp. at 5 n.1 (admitting the "sliding scale" approach survived *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)). Even if they were not, for the following reasons, HomeAway has shown it will suffer irreparable harm absent an injunction; the balance of equities tips in its favor; and the public interest favors an injunction.

### 1.     HomeAway will suffer irreparable harm absent an injunction.

HomeAway will suffer irreparable harm if this Court does not enjoin enforcement of the law.

***First***, HomeAway will suffer irreparable harm because the Ordinance infringes constitutional rights. Mot. at 23. "It is well established that the deprivation of constitutional

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002

(9th Cir. 2012). *See also Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

injury."); *LaDuke v. Nelson*, 762 F.2d 1318, 1330 (9th Cir. 1985) ("it should be evident" that

plaintiffs subject to unreasonable searches face "immediate irreparable injury").

 *Second*, HomeAway faces a patent and credible threat of prosecution and fines under the

Ordinance, though federal law preempts it. *See* Mot. at 23-24 (citing cases). The City does not

dispute that federal preemption of an ordinance is sufficient to establish irreparable harm. The

City does not contest that its aim is to enforce the Ordinance against HomeAway. Instead, the

City merely argues that HomeAway needs to establish "a strong likelihood of success on the

merits of its SCA argument," Resp. at 14, an argument that assumes its conclusion. In fact,

HomeAway has shown a strong likelihood of prevailing on its preemption arguments, and

preemption by itself satisfies the irreparable harm requirement. *See* Mot. at 23-24; *Ga. Latino

Alliance for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1269 (11th Cir. 2012) (threatened

enforcement of state laws "that conflict with federal law" shows irreparable harm).[6]

 *Finally*, HomeAway risks lost consumer goodwill and a disruption to its operations. The

City recognizes a loss of goodwill constitutes irreparable harm. Resp. at 17; Mot. at 17 (citing

cases). *See also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir.

2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a

finding of the possibility of irreparable harm."). Instead, the City argues HomeAway has

provided no evidence it will suffer such a loss. To the contrary, HomeAway's vice president for

---

[6] The City claims any argument about fines is "premature" because the City has not fined
HomeAway under the new ordinance. Resp. at 17. But that is only the case because HomeAway
filed a motion for temporary restraining order, after which the City agreed not to enforce the law
until this Court decides this motion. Doran Decl. ¶ 2. Indeed, the City has previously fined
HomeAway under sections of the Ordinance that it now concedes are invalid. *See City of
Portland v. HomeAway.com, Inc.*, No. 3:15-cv-01984-MO, Dkt. 34 ¶¶ 26-27, Ex. 3-5, 7.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

North American business has attested that "customers have come to expect we will respect the privacy of their information," and "[r]equiring HomeAway to disclose customer information" without the required process "would undermine customers' confidence in HomeAway's commitment to keeping their information private and damage its business." Furlong Decl. ¶¶ 11, 16. The City offers no response. Further, the case on which the City relies, *Oakland Tribune, Inc. v. Chronical Publishing Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985), is irrelevant. There, a newspaper waited "a number of years" to file its lawsuit and "no new harm [was] imminent." HomeAway has established irreparable harm absent an injunction.

### 2. The balance of equities and public interest favor HomeAway.

The City argues these factors warrant denial of HomeAway's injunction request. Resp. at 18-22. In doing so, it grossly overstates the harms it will suffer in the absence of enforcement, and understates the harm to HomeAway and its users if enforcement proceeds.

Permitting a preempted law to be enforced and constitutional rights to be violated is neither equitable nor in the public interest. Mot. at 24-25 (citing cases). As the Ninth Circuit has held: "[I]t is clear that it would not be equitable or in the public's interest to allow the state … to violate the requirements of federal law." *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852-53 (9th Cir. 2009); *see also Valle del Sol v. Whiting*, 2012 WL 8021265, at *7 (D. Ariz. Sept. 5, 2012) ("it would not be equitable or in the public interest to permit the enforcement of a preempted provision of state law"), *aff'd*, 732 F.3d 1006 (9th Cir. 2013). *See also, e.g.*, *Tex. Midstream Gas Servs. LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010) (where a statute is expressly preempted by federal law, "a finding with regard to likelihood of success fulfills the remaining requirements").

The City ignores this authority and focuses instead on interests it purports to advance through the Ordinance. But the City's proffered parade of horribles is unsupported, illogical, and cannot override the CDA's or SCA's protections and preemptive effect.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax

The City argues that the disclosure requirements of the Ordinance (and its substantial penalties) are necessary because the City cannot otherwise enforce regulations on hosts who list properties for short-term rentals. *See* Resp. at 20. This is misleading at best, but also wrong. As discussed above, the City may obtain basic information about hosts who list their properties on HomeAway *if* the City follows 18 U.S.C. § 2702(c)(2) by issuing a proper subpoena.

The City also suggests it is "nearly impossible" to determine whether hosts are complying with the City's registration requirements, Resp. at 20, relying on a declaration from the City's Tax Division Manager, Terri Williams. Dkt. 31 ¶¶ 3, 6. But records obtained from the City through a public records request contradict the City's assertion and reveal that it has been able to identify and issue violation notices to 321 hosts listing properties online (assessing $20,400 in civil penalties). Declaration of Rachel Lee, Ex. 2 at 2. As reflected in the City's emails, it has committed someone to "play detective and use a variety of different tools" available online (e.g., Google Maps and image searches, as well as Portland and Multnomah County records) to identify hosts. *See id.* Ex. 1 at 2.

Finally, the City suggests HomeAway poses a "threat to the public" because it is "facilitating the renting out of properties … that may not have complied with health and safety inspections," and its failure to provide information "compromises the permanent housing stock and the quality of life in residential neighborhoods." Resp. at 20-22. This argument offers nothing more than the City's purported justifications for regulating and restricting short-term rentals generally. Whatever bases the City may have to impose requirements on hosts who offer properties for short-term rentals, this cannot justify violating the SCA.

As the City acknowledges, it is unlawful to operate a short-term rental that does not comply with City code or which does not have a permit. And as the exhibits to the Lee Declaration make clear, the City can and does enforce these laws on its own. Merely because it would be *easier* for the City to obtain information from HomeAway rather than investigate on its

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

own does not mean the equities favor permitting it to violate the privacy rights of Internet users. To the contrary, Congress has decided those rights are of paramount importance.

### E. The Court Should Not Require Any Security

Federal Rule of Civil Procedure 65(c) permits preliminary injunctive relief "'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.' Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis added). The Court should dispense with the security requirement here.

Courts regularly do not require bonds for injunctions based on constitutional challenges. *See, e.g.*, *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996); *Mercer, Fraser Co. v. County of Humboldt*, 2008 WL 4344523, at *2 (N.D. Cal. Sept. 22, 2008) (no bond required where "injunction will require the defendant to incur little or no monetary costs and … is sought to vindicate constitutional rights and the public interest"); *Peace Action of Wash. v. City of Medina*, 2000 WL 33959359, at *1 (W.D. Wash. Nov. 3, 2000) (waiving requirement where "rights sought to be enforced or protected by this preliminary injunction are matters of constitutional significance and in the public interest"). Because HomeAway's challenges implicate the First Amendment, Supremacy Clause, and the Fourth Amendment interests underlying the SCA, the Court should not require security.

As the City recognizes, the Court may also "dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson,* 572 F.3d at 1086. *See* Resp. at 22.[7] "Harm" means economic loss. *See United States v. Oregon*, 675 F. Supp. 1249, 1253 (D. Or. 1987) ("court may dispense with

---

[7] The City argues "security may *only* be waived if 'there is no evidence the party will suffer damages.'" Resp. at 22 (quoting *Edge Wireless, LLC v. U.S. Cellular Corp.*, 312 F. Supp. 2d 1325, 1336 (D. Or. 2003)). But *Edge Wireless* does not say this, nor is this assertion correct.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

security if granting of the injunction carries no risk of **monetary** loss or damage to the party enjoined") (emphasis added); *Qualcomm, Inc. v. Motorola, Inc.*, 185 F.R.D. 285, 287 (S.D. Cal. 1999) ("to recover a bond … the enjoined party must … show[] … **monetary** damages") (emphasis added). Further, "[a] district court need not order security with respect to potential economic damages that are speculative at best." *TAP Worldwide, LLC v. Becker*, 2010 WL 2757354, at *6 (C.D. Cal. July 12, 2010) (internal quotation marks omitted).

Here, the only **monetary** harm the City alleges is in the form of lost fines and penalties. *See* Resp. at 23. But "[i]t would be a mistake to treat a revenue loss to the Government the same as pecuniary damage to a private party." *Nat. Res. Def. Council, Inc. v. Morton*, 337 F. Supp. 167, 169 (D.D.C. 1971). Thus, courts often waive security where the government foregoes fines for enforcing an invalid law. *See, e.g.*, *Garrett v. City of Escondido*, 465 F. Supp. 2d 1043, 1059-60 (S.D. Cal. 2006) (municipality conceded it would not incur costs from injunction restraining enforcement of ordinance providing civil fines); *Watkins v. City of Arlington*, 2014 WL 3408040, at *14 (N.D. Tex. July 14, 2014).

Finally, the City suggests it will be unable to collect taxes or ensure the safety of short-term rentals absent information from HomeAway. But again, the City already has the means to enforce its short-term rental laws and health and safety requirements directly on the individuals to whom the law applies. The Court should decline to require HomeAway to provide security.

### III. CONCLUSION

For these reasons, HomeAway respectfully requests that the Court permanently enjoin PCC §§ 6.04.060(B) and (D), and 6.04.170(F) and (G), and preliminary enjoin PCC §§ 6.04.060(A), 6.04.040(B), 6.04.130(B), and 6.04.170(E).

DATED this 13th day of March, 2017.

**DAVIS WRIGHT TREMAINE LLP**

By  s/ Ambika K. Doran

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
(503) 241-2300 main · (503) 778-5299 fax

Gregory A. Chaimov, OSB #822180
gregorychaimov@dwt.com
Telephone:  503-778-5328
Tim Cunningham, OSB #100906
timcunningham@dwt.com
Telephone:  503-778-5386
Facsimile:  503-778-5299

James C. Grant (*pro hac vice*)
jimgrant@dwt.com
Ambika K. Doran (*pro hac vice*)
ambikadoran@dwt.com
Tom Wyrwich (*pro hac vice*)
tomwyrwich@dwt.com
1201 Third Avenue, Suite 2200
Seattle, Washington  98101
Telephone: (206) 757-8096
Facsimile: (206) 757-7096

Attorneys for Plaintiff HomeAway.com, Inc.

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, Oregon  97201-5610
(503) 241-2300 main · (503) 778-5299 fax