IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**HOMEAWAY.COM, INC.,**

        Plaintiff,

v.

**CITY OF PORTLAND,**

        Defendant.

No. 3:17-cv-00091-MO

OPINION AND ORDER

**MOSMAN, J.**,

This matter comes before me in connection with Plaintiff HomeAway.com, Inc.'s ("HomeAway") Motion for a Temporary Restraining Order [7], which the parties subsequently agreed to treat as a motion for a preliminary injunction. At issue is whether the preliminary injunction, which I GRANTED in regards to Defendant City of Portland's ("the City") enforcement of Portland City Code ("PCC") § 6.04.040(B), also applies to PCC § 6.04.130(B). For the reasons set forth below, I conclude that it does not.

## BACKGROUND

On January 23, 2017, HomeAway moved to enjoin several provisions of the City's newly-amended Transient Lodgings Tax Ordinance, PCC § 6.04.010, *et seq.* ("the Ordinance"). I held oral argument on March 20, 2017, and GRANTED in part and DENIED in part HomeAway's motion. Specifically, I enjoined the City from enforcing PCC § 6.04.040(B) ("Disclosure Provision") because the provision is likely preempted by the Stored

Communications Act ("SCA"). Moreover, in light of the City's concession, I also enjoined enforcement of PCC § 6.04.060 (B) and (D) ("Permit Provisions") because the provisions are likely preempted by the Communications Decency Act ("CDA"). Finally, I determined that additional briefing was required to decide whether § 6.04.130(B) ("Audit Provision") was also likely preempted by the SCA. As such, I ordered the parties to submit simultaneous briefs addressing the standard for a facial challenge to the Audit Provision. The parties submitted their briefs on April 3, 2017.

## DISCUSSION

HomeAway seeks an injunction to the Audit Provision on the same grounds as the Disclosure Provision: preemption by the SCA. But the City is not currently conducting an audit, and the breadth of the Audit Provision makes it difficult to determine exactly what the City would require from HomeAway were an audit to occur. As such, HomeAway admits that its challenge to the Audit Provision is facial in nature. For the reasons below, I find that HomeAway's challenge is unlikely to succeed on the merits.

### I. Nature of HomeAway's Challenge

As a preliminary matter, it is important to note that "the line between facial and as-applied relief is a fluid one," and cases can sometimes occupy an intermediate position between the two. *United States v. Supreme Court of N.M.*, 839 F.3d 888, 908 (10th Cir. 2016) (quoting *Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 865 (11th Cir. 2013)). In *John Doe No. 1 v. Reed*, for example, the Supreme Court considered a challenge to a state public records law that authorized private parties to obtain copies of government documents. 561 U.S. 186, 191 (2010). The plaintiffs sought to enjoin the law as applied to referendum petitions, arguing that disclosure would violate their First Amendment rights. *Id*. The Court found that the

plaintiffs' challenge had characteristics of both a facial and an as-applied challenge:

> "The claim is 'as applied' in the sense that it does not seek to strike the PRA in all its applications, but only to the extent it covers referendum petitions. The claim is 'facial' in that it is not limited to plaintiffs' particular case, but challenges application of the law more broadly to all referendum petitions."

*Id.* at 194. In any event, the Court noted that it was not the claim's label that mattered, but rather whether the "claim and relief that would follow . . . reach[ed] beyond the particular circumstances" of the plaintiffs bringing suit. *Id.*

Here, HomeAway's challenge to the Audit Provision also has characteristics of both a facial and an as-applied challenge. In its Complaint [1], HomeAway seeks a declaration that the Audit Provision, "as applied to HomeAway and similar entities," is preempted and, therefore, unenforceable. This claim is as-applied in the sense that it seeks only to enjoin enforcement of the Audit Provision against "HomeAway and similar entities," not all entities that might be considered "Operators" under the Ordinance. *See* PCC § 6.04.130(B) (limiting audits and investigations to "business[es] of the Operator"). But the claim also applies to situations and parties outside the ambit of this particular case, giving it characteristics of a facial challenge. Ultimately, because the claim reaches "beyond the circumstances of [this] plaintiff," HomeAway must satisfy the standard of a facial challenge "to the extent of that reach." *Reed*, 561 U.S. at 194.

## II. HomeAway's Likelihood of Success on the Merits

In order to obtain a preliminary injunction, a plaintiff must establish a likelihood of success on the merits. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In this case, HomeAway seeks a declaration that the Audit Provision is unenforceable, in part, because it is

preempted by the SCA.[1] Whether HomeAway is likely to succeed on the merits of this claim "is guided by principles of preemption jurisprudence and the unique burdens imposed on facial challenges." *See Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1103 (9th Cir. 2016).

A. *Preemption Doctrine*

Under the Supremacy Clause, Congress has the power to enact legislation that preempts state laws. *Arizona v. United States*, 132 S. Ct. 2492, 2500 (2012). But there is "a strong presumption against preemption," meaning that "federal law will only preempt state law if such preemption was the 'clear and manifest purpose of Congress.'" *Ctr. for Competitive Politics v. Harris*, 784 F.3d 1307, 1318 (9th Cir. 2015) (quoting *Arizona*, 132 S. Ct. at 2501). This presumption is especially strong when dealing with powers traditionally left to the states. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009).

Congress may exercise its preemption power expressly by enacting legislation that strips states of certain powers, or impliedly through conflict or field preemption. *Arizona*, 132 S. Ct. at 2500-01. "Conflict preemption occurs where (1) it is impossible to comply with both federal and state law, or (2) where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arpaio*, 821 F.3d at 1103 (citations omitted) (internal quotation marks omitted). Field preemption, on the other hand, occurs when a state law purports to regulate conduct "in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona*, 132 S. Ct. at 2501. In either instance, congressional intent remains the "ultimate touchstone" of the preemption inquiry. *Wyeth*, 555 U.S. at 565; *Arpaio*, 821 F.3d at 1104.

---

[1] In its Supplemental Brief [39], HomeAway also argues that the Audit Provision is unconstitutional under the Fourth Amendment. HomeAway did not make this argument in its original motion or at oral argument, and only makes it here in a footnote. Because the issue has not been fully briefed, I decline to make any ruling on whether HomeAway is likely to succeed on its claim that the Audit Provision is unconstitutional under the Fourth Amendment.

B. *Standard for Facial Challenges in Preemption Context*

To succeed on a typical facial challenge, a plaintiff must establish that "no set of circumstances exists under which the [law] would be valid." *U.S. v. Salerno*, 481 U.S. 739, 745 (1987). Whether this stringent standard applies to all facial challenges is a matter of considerable debate. *See, e.g.*, *U.S. v. Stevens*, 559 U.S. 460, 472 (2010) (noting that whether the *Salerno* standard applies in the typical case is a matter of dispute); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (noting that "some Members of the Court have criticized the *Salerno* formulation"). Furthermore, in the First Amendment context, the Supreme Court recognizes another standard "in which a statute will be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Arpaio*, 821 F.3d at 1104 (quoting *Stevens*, 559 U.S. at 473). But this "substantial number of applications" test has not been applied in facial preemption challenges. *Id.* As such, the Ninth Circuit recently held that, "[w]ithout more direction," the *Salerno* rule continues to apply in cases involving facial preemption. *Id.*; *see also Sprint Telephony PCS, L.P. v. Cty. of San Diego*, 543 F.3d 571, 579 n.3 ("The Supreme Court and this court have called into question the continuing validity of the *Salerno* rule in the context of First Amendment challenges. . . . In cases involving federal preemption of a local statute, however, the rule applies with full force." (citations omitted)).

C. *Application of Preemption and Facial Challenge Principles to HomeAway's Specific Challenge*

Applying these principles to the case at hand, I find that HomeAway is not likely to succeed on its claim that the Audit Provision is preempted by the SCA. Thus, HomeAway is not entitled to an order enjoining the enforcement of the Audit Provision.

I reach this conclusion recognizing that the scope of HomeAway's challenge is somewhat

limited. As noted above, HomeAway is not challenging the Audit Provision as it applies to every entity deemed an Operator under the Ordinance. Instead, HomeAway is merely challenging the Audit Provision, "as applied to HomeAway and similar entities." In this regard, HomeAway's challenge is similar to the plaintiffs' challenge to the PRA in *Reed*. There, the plaintiffs argued that the PRA violated the First Amendment "as applied to referendum petitions." *Reed*, 561 U.S. at 194. The Court concluded that the plaintiffs' claim was facial in nature but applied the facial analysis to the PRA only so far as the statute reached referendum petitions. *Id.* at 194 ("They must therefore satisfy our standards for a facial challenge *to the extent of that reach*." (emphasis added)), 202 ("PRA would not violate the First Amendment *with respect to referendum petitions in general . . . .*" (emphasis added)). Accordingly, although I analyze HomeAway's claim under the framework of a facial challenge, I do so only to the extent that the Audit Provision applies to HomeAway and similar entities. *Cf. Arpaio*, 821 F.3d at 1107-08 (noting that identity theft laws applied equally to "unauthorized aliens, authorized aliens, and U.S. citizens" when the plaintiff sought to enjoin "all applications" of the laws).

Bearing this limited scope in mind, I turn to the ultimate question of whether the Audit Provision is preempted by the SCA. HomeAway's only basis for preemption in this case is conflict preemption. Specifically, HomeAway argues that the Audit Provision requires HomeAway to "disclose customer information absent a subpoena or other legal process," which puts it in direct conflict with the SCA. The City responds that there are several ways in which it could request information under the Audit Provision without running afoul of the SCA.

To determine whether the Audit Provision conflicts with the SCA, I must first look at the substance and reach of each law. In 1986, Congress passed the SCA because "the advent of the Internet presented a host of potential privacy breaches that the Fourth Amendment does not

address." *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (citation omitted). To address these privacy concerns, "the SCA creates a set of Fourth Amendment-like privacy protections by statute, regulating the relationship between government investigators and service providers in possession of users' private information." *Id.* (quoting Orin S. Kerr. *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1212 (2004)) (internal quotation marks omitted). But, because the statute was written over 20 years ago, applying its framework to modern forms of communication can be rather confusing. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002).

Broadly, the SCA "protects users whose electronic communications are in electronic storage with an [internet service provider] or other electronic communications facility." *Theofel v. Farley-Jones*, 359 F.3d 1066, 1072-73 (9th Cir. 2004). Section 2701 of the SCA provides a private right of action against those who "intentionally access[] without authorization a facility through which an electronic communication is provided," and Section 2703 provides a set of procedures that government officials must follow in order to obtain information from network service providers. 18 U.S.C. §§ 2701, 2703. In regards to Section 2703, the mechanism by which the government can obtain information differs depending on (1) the type of network service provider involved – electronic communication service ("ECS") provider or remote computing service ("RCS") provider – and (2) the type of information sought – content, non-content, and basic subscriber. 18 U.S.C. § 2703; *see also* Brittany Brattain, *The Electronic Communications Privacy Act: Does the Act Let the Government Snoop Through Your Emails and Will It Continue?*, 17 N.C. J.L. & Tech. Online Ed. 185, 198-99 (2016). Thus, to determine whether the SCA applies in a case like this, a court must determine whether the information holder is a

network service provider and whether the information sought by the government entity is of the type contemplated by the SCA.

The Audit Provision allows the City to examine the tax records of Operators to ensure proper taxes are being paid. Specifically, it states:

> The Division, or any person authorized in writing by it, may examine during normal business hours the books, papers and accounting records relating to tax returns filed by any Operator, after notification to the Operator liable for collecting and remitting the tax, and may investigate the business of the Operator in order to verify the accuracy of any return made, or if no return is made or, to determine the amount required to be paid.

PCC § 6.04.130(B). The Audit Provision does not explain what it means by "books, papers and accounting records relating to tax returns filed by any Operator." But, by looking at the Ordinance as a whole, it is possible to gain a better sense of what the City may examine during an audit. *See Matter of J.C.N.-V.*, 380 P.3d 248, 258 (Or. 2016) ("In interpreting a statute, we also consider context.").

PCC § 6.04.130(A), for example, states that "Operators must keep appropriate records, including but not limited to registration forms or logs, accounting and bank records, supporting documentation for all deductions taken and any other documentation necessary to support the tax report filed or required to be filed." Additionally, the Disclosure Provision, which I already enjoined, demands SCA-protected information, in part, for "tax administration purpose[s]." PCC § 6.04.040(B). By looking at these provisions in the Ordinance, it is reasonable to conclude that "books, papers and accounting records" might include "registration forms or logs," addresses of transient lodging locations, and host contact information. As I concluded at oral argument, this type of information is likely covered under the SCA, and the City cannot do through the

back door (the Audit Provision) what it cannot do through the front door (the Disclosure Provision).

But concluding that the City may obtain information that violates the SCA through the Audit Provision is not the end of the analysis. Rather, I must decide whether this ability necessarily means the provision is facially preempted by the SCA. To answer this question, I look principally to the Ninth Circuit opinions of *Sprint Telephony PCS, L.P. v. County of San Diego* and *Puente Arizona v. Arpaio*.

In *Sprint Telephony*, the plaintiff brought suit against the County of San Diego, claiming that a county ordinance imposing restrictions on the construction of wireless telecommunications facilities was preempted by the Telecommunications Act of 1996. 543 F.3d at 573-74. After concluding that the county ordinance, on its face, did not prohibit the provision of telecommunication services in contravention of the Act, the Ninth Circuit addressed the plaintiff's complaint that the county ordinance gave the zoning board discretion to impose "almost any condition it deem[ed] appropriate." *Id.* at 579-80. The Ninth Circuit found that although the zoning board "*could* exercise its discretion to effectively prohibit the provision of wireless services," it was equally possible that the zoning board would exercise its discretion in ways that did not conflict with the Act. *Id.* at 580. Accordingly, the Court found that the Act did not preempt the county's ordinance. *Id.*

Similarly, in *Arpaio*, the Ninth Circuit considered whether the plaintiff had sufficiently shown that an Arizona identity theft statute was facially preempted by the Immigration Reform and Control Act ("IRCA") to warrant a preliminary injunction. 821 F.3d at 1108. The plaintiff argued, in part, that the state statute was unenforceable

9 – OPINION AND ORDER

because it conflicted with IRCA's provision limiting the use of a person's work status information in criminal prosecutions. *Id.* In rejecting this argument, the Ninth Circuit reasoned:

> Just because Arizona could (and has in the past) enforced the identity theft laws in violation of IRCA's document use limitation does not mean the laws should be struck down in their entirety. Arizona retains the power to enforce the laws in ways that do not implicate federal immigration priorities.

*Id.* Accordingly, the Ninth Circuit found that the plaintiff's facial challenge of the identity theft statute was unlikely to succeed on the merits. *Id.*

As already noted, HomeAway argues that its challenge is limited to HomeAway and similar entities, and this argument is correct as far as it goes. But, even when considering HomeAway's challenge within this limited subset of websites like HomeAway, there is nothing in the text of the Audit Provision or broader context of the Ordinance suggesting that an audit would necessarily involve review of SCA-protected information. The Audit Provision provides that the City *may* review this information, but, like the state in *Arpaio*, the City retains the power to enforce the provision in a way that does not run afoul of the SCA. For example, the City might simply require HomeAway to provide bank records to determine whether amounts, calculations, and deductions were properly reported on a particular return. This information is likely within the scope of the Audit Provision but is not the type of third-party electronic communications protected by the SCA. Thus, because the Audit Provision has obvious applications that do not violate the SCA, HomeAway has not met its burden to show a "clear and manifest purpose to completely preempt" the Audit Provision. *See id.*

HomeAway relies, in part, on *United States v. Stevens* to argue that the City's "unbridled discretion" makes the Audit Provision facially invalid. In *Stevens*, the

Supreme Court considered whether a statute that criminalized depictions of animal cruelty was facially invalid under the First Amendment. 559 U.S. at 472. The Court found that the presumptively impermissible applications of the statute far outweighed the permissible applications, making the statute constitutionally invalid. *Id.* at 481-82. The Court also rejected the government's argument that it would construe the statute in only permissible ways, since the Court "would not uphold an unconstitutional statute merely because the government promised to use it responsibly." *Id.* at 480.

HomeAway's reliance on *Stevens*, however, is somewhat misplaced. There, the Court was considering a facial challenge in the First Amendment context, which involves a less demanding standard than facial preemption cases. *See Harris*, 784 F.3d at 1315. Moreover, it is not necessarily the case that the City is promising to enforce the Audit Provision responsibly; rather, the Audit Provision simply has non-SCA related applications that are "obvious" from the text. *See Arpaio*, 821 F.3d at 1104.[2]

In sum, even though some potential applications of the Audit Provision would run afoul of the SCA, the tension between them "is not enough to rise to the level of a 'clear and manifest purpose' to preempt" the Audit Provision in its entirety. *Id.* at 1105 (citing *Wyeth*, 555 U.S. at 565). Thus, HomeAway has not sufficiently shown that it is likely to succeed on its facial challenge of the Audit Provision and is not entitled to an order enjoining that provision.

---

[2] HomeAway also relies on two other cases to support its position. *See City of Los Angeles v. Patel*, 135 S. Ct. 2443 (2015); *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307 (2012). In *Patel*, the Court considered the plaintiffs' challenge to a statute that authorized a type of warrantless search. 135 S. Ct. at 2447. The city argued that the facial challenge failed because "such searches will never be unconstitutional in all applications," such as where the "subject of the search consents to the intrusion." *Id.* at 2450. The Court rejected the city's argument, reasoning that the "proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant." *Id.* at 2451. This case does not help HomeAway's position, however, because whereas the city's argument in *Patel* did not "involve actual applications of the statute," the City's arguments here do. Language from *FCC* is also not helpful because there, the Court was addressing a due process vagueness issue rather than a facial preemption challenge. *See* 132 S. Ct. at 2317-18.

### III. Additional Matter

In its supplemental brief, HomeAway also highlights the fact that I did not explicitly address PCC § 6.04.170(E) in my March 20, 2017 ruling. PCC § 6.04.170(E) tracks the Disclosure Provision in that it assesses a penalty for failing to "provide any data or other information requested by the Division, including but not limited to, the physical address of a transient lodging occupancy location within Portland and the related contact information." Because PCC § 6.04.170(E) is essentially the enforcement mechanism for the Disclosure Provision, which I enjoined on March 20, 2017, I also enjoin PCC § 6.04.170(E), so far as it applies to information sought under the Disclosure Provision.

## CONCLUSION

For the reasons stated above, I enjoin the City from enforcing PCC § 6.04.170(E), so far as it pertains to information sought under the Disclosure Provision. The City is not enjoined from enforcing the Audit Provision, however, as HomeAway has not sufficiently shown a likelihood of success on the merits in regard to that provision.

IT IS SO ORDERED.

DATED this __11__ day of May, 2017.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge